395 Mich. 96 (1975)
235 N.W.2d 132
GUILTY PLEA CASES (PEOPLE v. NICHOLSON)
Docket Nos. 57025, 57005, 57039, 57036, 57007, 57018, 57035, 57032, 57031, 57003, 57011, 57017, 57022, 57023, 57037, 57009, 57060, 57088, 57047, 57091, 57067, 57083, 57110, 57112, (Calendar Nos. 2-25.).
Supreme Court of Michigan.
Argued September 2-3, 1975.
Decided November 7, 1975.
Frank J. Kelley, Attorney General, and Robert A. Derengoski, Solicitor General, for the people.
William L. Cahalan, Wayne Prosecuting Attorney, Patricia J. Boyle, Principal Attorney, Research, Training & Appeals; and Arthur N. Bishop, Assistant Prosecuting Attorney, for the people in Nicholson, Torres, Stephens, Smith, Howell, Hord, *110 Burkett, Neal, Sanders, Dillard, Young, Victor, Harrell, Robinson, and Simpson; and Raymond P. Walsh, Assistant Prosecuting Attorney, for the people in Crowder.
George N. Parris, Macomb Prosecuting Attorney, Don L. Milbourn, Chief Appellate Lawyer, and William A. Dardy, Assistant Prosecuting Attorney, for the people in Courtney.
William F. Delhey, Washtenaw Prosecuting Attorney, and John J. Hensel, Senior Assistant Prosecuting Attorney, for the people in Pleasants.
Robert F. Leonard, Genesee Prosecuting Attorney, and Donald A. Kuebler, Chief, Appellate Division, for the people in Buck.
James L. Banks, Ionia Prosecuting Attorney, and Prosecuting Attorneys Appellate Service (by Edward R. Wilson, Director, and Howard C. Marderosian, Special Assistant Attorney General) for the people in Grohoski.
Bruce A. Barton, Jackson Prosecuting Attorney, and Judd R. Spray, Assistant Prosecuting Attorney, for the people in Adkins.
Peter E. Deegan, St. Clair Prosecuting Attorney, and Peter R. George, Chief Appellate Attorney, for the people in Bauer.
David L. Smith, Eaton Prosecuting Attorney (by Chester S. Sugierski, Jr., Assistant Prosecuting Attorney) for the people in Cotton.
Eugene C. Penzien, Bay Prosecuting Attorney, and George B. Mullison, Chief Assistant Prosecuting Attorney, for the people in Anderson.
*111 Lawrence B. MacDonald, for defendant Nicholson.
State Appellate Defender Office (by John A. Lydick, Assistant Defender, for defendants Torres and Pleasants; Kathleen M. Cummins, Assistant Defender, for defendant Simpson; Kenneth Lerner, Assistant Defender, for defendants Adkins and Bauer; Daniel J. Wright, Assistant Defender, for defendant Cotton; and Francis Zebot, Assistant Defender, for defendant Anderson).
Robert L. Ziolkowski, for defendant Stephens.
Carl Ziemba, for defendants Smith and Sanders.
Thomas A. Neenan, for defendant Howell.
Thomas J. Cavanaugh, for defendant Hord.
M. Jon Posner, for defendant Crowder.
Richard L. Ruby, for defendant Burkett.
J. Thomas Carroll, Jr., for defendant Neal.
Theodore B. Sallen (Alvin C. Sallen, of counsel) for defendants Dillard and Young.
Lawrence R. Greene, for defendant Victor.
George C. Dovas, for defendant Harrell.
Raymond L. Miller, for defendant Robinson.
Nick Dottermann, for defendant Courtney.
Raymond C. June, for defendant Buck.
*112 Gerald J. Supina, for defendant Grohoski.
Amicus Curiae:
Prosecuting Attorneys Appellate Service (by Dennis M. Powers, Assistant Attorney General) for Prosecuting Attorneys Association of Michigan.
William L. Cahalan, Wayne Prosecuting Attorney, Patricia J. Boyle, Principal Attorney, Research, Training & Appeals; and Arthur N. Bishop, Assistant Prosecuting Attorney.
L. Brooks Patterson, Oakland Prosecuting Attorney, and Robert C. Williams, Chief Appellate Counsel.
State Appellate Defender Office (by James R. Neuhard, Director, and John A. Lydick, Daniel J. Wright, and Kathleen Cummins, Assistant Defenders).
Decided November 7, 1975. Rehearing denied as to defendants Bauer, Torres, Simpson, Cotton, Anderson, Adkins, and Pleasants at 395 Mich 912.
MEMORANDUM OPINION.
In People v Shekoski, 393 Mich 134; 224 NW2d 656 (1974), this Court reversed a guilty plea conviction and declared:
"The requirements for a valid guilty plea after June 1, 1973 are set forth specifically in GCR 1963, 785.7. The bench and bar are hereby advised that strict adherence to those requirements is mandatory and that neither substantial compliance nor the absence of prejudicial error will be deemed sufficient. GCR 1963, 785.7(5)."
After the Shekoski order was entered, the Court of Appeals reversed a large number of guilty plea convictions for failure of the trial court to comply strictly with Rule 785.7. Prosecutors have filed *113 applications for leave to appeal in some of those cases.
We became convinced that we should reconsider the policy expressed in Shekoski, and we entered two orders  the first granting leave to appeal in 114 appeals pending in the Court of Appeals (394 Mich 776), and the second directing the Court of Appeals to hold in abeyance any decision on the merits of issues related to the integrity of the plea-taking procedure in all other cases (394 Mich 946).
Oral arguments were scheduled in these 24 of the 114 transferred appeals. The remaining 90 have not yet been submitted.
We conclude that the policy expressed in Shekoski, that any failure of strict adherence to the procedure and practice specified in Rule 785.7 mandates reversal, should be modified. Noncompliance with a requirement of Rule 785.7 may but does not necessarily require reversal.
Whether a particular departure from Rule 785.7 justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance.
Rule 785.7 requires that before a plea of guilty may be accepted, the trial judge shall
 personally address the defendant and inform him of and determine that he understands
i) the general nature of the charge to which the plea is offered;
ii) the sentence which may be imposed and the possibility of other sentence consequences;
iii) that his plea of guilty waives his right to a trial and to certain constitutional and other rights incident to a trial; and
 place on the record
iv) a factual basis for the plea; and
v) any plea agreement.
*114 These 24 appeals present some of the issues which have arisen in the application of this rule.
I
PERSONALLY ADDRESS
Rule 785.7 provides:
".7 Plea of Guilty and Plea of Nolo Contendere. A defendant may enter a plea of guilty or plead nolo contendere only with the consent of the court. If the defendant states his intent to plead guilty or to plead nolo contendere the following practice shall be observed:
"(1) Advice by the Court. The court shall not accept a plea of guilty or nolo contendere without first personally addressing the defendant and informing him of and determining that he understands the following:".
In Courtney, the judge did not personally advise the defendant of the maximum sentence but in moving to add a second count the prosecutor stated the maximum penalty of five years.
In Bauer, the judge did not state the charge but the prosecutor read the information on the plea record.
These departures do not justify reversal. While it would be better for the judge to cover all the points himself, as long as he assumes the principal burden of imparting the required information, as did the judges in Courtney and Bauer, the purpose of requiring him personally to address the defendant and in so doing observe his demeanor and responses is achieved.
A guilty plea conviction will not be reversed if the judge engages in the required colloquy but fails to mention an item which the record shows was established through, for example, an opening *115 statement of or interjection by the prosecutor or defense counsel in the hearing of the judge and defendant. It is proper for the prosecutor or the clerk to read the information in the judge's presence.
Nor do we regard "grouping" of the rights in the judge's recital inconsistent with the "personally address" requirement. All judges "group" the recital to some extent, combining a number of rights and imparting several items of information without pause for response by the defendant. No one method of recital is required.
In Nicholson and Bauer the judge recited the rights without interruption concluding, in Nicholson, "Now, if that is clear  is it?" and in Bauer, "Do you wish to enter a plea to Count Two?" In Pleasants, the judge both began and ended his uninterrupted recitation of the rights specified in 785.7(1)(d) by asking the defendant if he understood that he was waiving or "giving up" those rights.
The method of recital in each of these cases satisfied the "personally address" requirement.
II
GENERAL NATURE OF THE CHARGE
The rule continues (785.7[1] [a]):
"(a) the general nature of the charge to which the plea is offered; the court is not obliged to, but may explain the elements of the offense or any defenses possible;".
The rule requires the judge to inform the defendant and determine that he understands the "general nature" of the charge to which the plea *116 is offered. The judge may, but he is not obliged to, explain the elements of the offense.
In Torres, the judge said, "They are adding a count of robbery unarmed".
In Adkins, the judge informed the defendant he was charged with the crime of manslaughter.
In Courtney, the judge described the offense as "attempted uttering and publishing an instrument which you knew to be false for the payment of money".
In Bauer, the prosecutor read the information and the judge asked the defendant, "Do you understand the charges in both Count One and Count Two?"
In Simpson, the judge informed the defendant he was charged with breaking and entering. In fact he was charged with attempted breaking and entering of an occupied dwelling house.
It is contended that to insure that a defendant understands the general nature of the charge the judge should name and explain at least the salient elements of the offense.
In the necessary accommodation of the desirable with the practicable, it would be unrealistic to impose on the judge the obligation to impart to a defendant the substantive law applicable to his case.
In Torres, defendant pled guilty to a reduced charge of unarmed robbery. Robbery can be defined as the six elements of larceny plus two more  (7) the taking must be from the person of the victim or in his presence (8) by violence or intimidation. LaFave & Scott, Criminal Law, §§ 85, 94, pp 622, 692.
Even if the judge named these eight elements, his task, arguably, would not be concluded. Depending on the facts of the case, one or more of these elements may require further elucidation to *117 adequately inform the defendant of the law applicable to his case. What constitutes "from the person" or "in his presence"? What constitutes "violence or intimidation"? What is a "taking", a "carrying away", or an "intent to steal"?
In Adkins, the defendant pled guilty to a reduced charge of manslaughter. The law of homicide is perhaps the most complex part of the law of crimes. Professors LaFave and Scott adumbrate the definitional problem when they say, "Manslaughter * * * includes homicides which are not bad enough to be murder but yet are bad enough to be criminal." LaFave & Scott, Criminal Law, § 75, p 571.
In Simpson it is apparent on the record that the misstatement that the charged offense was breaking and entering did not mislead the defendant. Simpson was charged with and pled guilty to attempted breaking and entering an occupied dwelling house. He did not mistakenly plead to the offense named by the judge.
Although a person charged with breaking and entering an occupied dwelling house is subject to a higher sentence than one who breaks and enters some other structure or an unoccupied dwelling house, the general nature of the charge is correctly and adequately described by the generic term "breaking and entering" or its common-law equivalent, burglary.
In none of these cases was there a failure to comply with 785.7(1)(a).
III
SENTENCE CONSEQUENCES OF A PLEA OF GUILTY
Maximum-Minimum:
The rule continues (785.7[1] [b]):
*118 "(b) the maximum sentence and the mandatory minimum sentence, if any, for the offense to which the plea is offered."
In Hord, the judge informed the defendant that by pleading guilty to robbery armed he subjected himself to a possible sentence of "up to life" but did not advise him that he could not be placed on probation. A person convicted of armed robbery is subject to a sentence of life or any term of years (MCLA 750.529; MSA 28.797), and may not be placed on probation (MCLA 771.1; MSA 28.1131).
The rule does not require the judge to inform the defendant of all sentence consequences  only the maximum sentence, any mandatory minimum and, as appears below, if he is on probation or parole, the possible effect on his status as a probationer or parolee.
The rule reflects the extent to which this Court is willing to impose on the judge the obligation of informing the defendant of such consequences. A failure to impart the information so required by this subsection (b) will continue to require reversal.
Probation-Parole:
The rule continues (785.7[1] [c]):
"(c) that, if the defendant is on probation or parole, the entry of his plea in the present action admits violation of probation or parole, and may subject him to a sentence of imprisonment for the offense under which he was paroled or placed on probation."
In Torres, the judge said, "by pleading guilty this might be or might not be in violation of your parole?" Defendant contends this is not the same *119 as telling him that the plea admits violation of parole.
In Anderson, the defendant was informed that his plea subjected him to return to prison as a parole violator, would be a violation of probation, and might be grounds for the sentencing judge to revoke his probation; he was not advised in so many words that he "may subject him[self] to a sentence of imprisonment".
The purpose of subsection (c) is to impart to the defendant that he may be sentenced as a probation or parole violator. The judges in these cases conveyed the sense of that concept to the defendants although they did not recite (c) word for word. No more is required. Rule 785.7 does not require literal or rote compliance.
Failure in Buck to advise the defendant of probation and parole consequences is without significance, as the defendant acknowledged on the record that he was not on probation or parole.
In none of these cases was there a failure to comply with 785.7(1)(c).
IV
CONSTITUTIONAL RIGHTS OF THE DEFENDANT AND PRE-SENTENCE CONSEQUENCES OF A PLEA OF GUILTY  WAIVER OF RIGHT TO TRIAL
The rule continues (785.7[1] [d]):
"(d) that by his plea of guilty or nolo contendere the defendant waives the following rights:
"(i) the right to a jury trial or trial by the court,
"(ii) the right to be presumed innocent until proven guilty beyond a reasonable doubt,
"(iii) the right to confront and to question the witnesses against him and to have compulsory process for obtaining witnesses in his favor,
*120 "(iv) the right to remain silent or to testify at his trial, as he may choose, and that at a trial no inferences adverse to him may be properly drawn if defendant chooses not to testify."
The purpose of subsection (d) is to assure that the defendant is informed, and thus to enable the judge to determine that the defendant understands, that his plea waives his constitutional right to a trial. To that end, the defendant is to be apprised of some of the rights and incidents of a trial.
Subdivision (d)
(i) states that the trial may be by jury or by the court,
(ii) speaks of the people's burden of proof at a trial,[1]
(iii) refers to the rights to confront and question and to have compulsory production of witnesses, and
(iv) speaks of the Fifth Amendment privilege to remain silent and the defendant's due process right to testify. See Ferguson v Georgia, 365 US 570, 602; 81 S Ct 756; 5 L Ed 2d 783 (1961), concurring opinion of Mr. Justice Clark. See also Brooks v Tennessee, 406 US 605; 92 S Ct 1891; 32 L Ed 2d 358 (1972).
All the rights mentioned are of constitutional magnitude except the statutory right to trial by the court. (MCLA 763.4; MSA 28.857.) Three of them have been given preeminent importance. In People v Jaworski, 387 Mich 21; 194 NW2d 868 (1972), decided after Boykin v Alabama, 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969), this *121 Court held that a plea of guilty is constitutionally defective and the conviction must be set aside if the defendant is not advised of his rights to have a jury trial, to confront his accusers, and to remain silent.
A Jaworski defect cannot be corrected on a remand. If we were to remand for supplementation of the record in an effort to correct such a defect, the defendant  who wishes to have his plea set aside  could, on being informed of the omitted Jaworski right, simply state: "I didn't know that". In the face of such a disclaimer, the judge could not properly conclude that the defendant understandingly waived the omitted right.
The attorney-client privilege precludes questioning the defendant's lawyer to establish that he was informed by his lawyer of the omitted right.
That a defendant may have been tried by a jury in another case or learned of his rights in an earlier plea-taking proceeding would no more negate his right to be informed of the right to and incidents of a trial at the time a plea of guilty is offered than would proof that he had seen Perry Mason on television or read Erle Stanley Gardner.
Many defendants have been made aware at one time or another of the right to and incidents of a trial and the consequences of a plea of guilty. Nevertheless, whatever the personal history of the accused and the quality of his representation, the appearance of justice and the integrity of the process by which pleas of guilty are offered and accepted require, in the solemn moment of passage from presumed innocence to conviction and potential imprisonment, that the judge apprise every defendant of the rights he is waiving and consequences of his plea and make the other determinations required by the rule. However, a recital of *122 rights to one defendant by one judge on one day, may suffice as a recital of rights to that same defendant by the same judge on that same day in another case.
The primary purpose of subsection (d) is to impress on the accused that by his plea of guilty he waives his right to a trial. If it appears on the record that this purpose has been achieved, the omission of one or another of these rights, other than a Jaworski right, or the imprecise recital of any such right, including a Jaworski right, does not necessarily require reversal.
On appeal the issue is whether it appears on the record that the defendant was informed of such constitutional rights and incidents of a trial as reasonably to warrant the conclusion that he understood what a trial is and that by pleading guilty he was knowingly and voluntarily giving up his right to a trial and such rights and incidents.
In a number of cases all the rights specified in (d) were adverted to in the advice to the defendant; the issue raised is one of wording, not omission.
In Harrell, the defendant was not in terms told of her right "to remain silent", but she was advised that she was "not required to take the stand and testify".
In Torres, instead of stating that the defendant could be tried "by the court" and question the witnesses "against him", he was told that he could have a trial "with or without a jury" and that he was entitled to see, confront and examine "the" witnesses.
In Simpson, the judge told the defendant "you would have the presumption of innocence" but did not add "until proven guilty beyond a reasonable doubt". Like the defendant in Harrell, Simpson was told about the right to remain silent by being *123 advised that he could "choose not to take the stand".
In Cotton, instead of telling the defendant of his right to "compulsory process" in those terms, the judge informed him that he would "be privileged to have any help this court can give you in compelling the attendance of witnesses".
In Courtney and Grohoski, while the defendants were informed of their rights, they were not told in so many words that by a plea of guilty they "waived" those rights.
These wording differences are not crucial to the central determination of whether the defendant was informed of and understandingly gave up his right to a trial and the rights and incidents of a trial.
In other cases the issue is omission. The defendants were advised of all but one or two of the rights and incidents of a trial mentioned in 785.7(1)(d).
The omission in Anderson of the elaboration of the right to confront  the right to question the witnesses  does not justify reversal.
We reach the same conclusion in Buck and Smith where the defendants were not informed of their right to compulsory process.
The omission in Nicholson of the statutory right to trial by the judge does not justify reversal.
The omission in Neal of the corollary of the right to remain silent  the right not to remain silent and "to testify at his trial"  does not justify reversal.
Nor is reversal justified in Adkins because of the failure to advise the defendant "that at a trial no inferences adverse to him may be properly drawn" if he chooses not to testify.
Some claims of omission or imprecise recital *124 relate to Jaworski rights. In Harrell and Howell, the defendants were informed of their right to question the witnesses against them, but were not in terms advised of their right to "confront" the witnesses so subject to cross-examination. In Stephens, the defendant was not specifically advised of his right to a jury trial but he answered affirmatively when asked whether he understood that he would have a right to a trial and that if he declined to testify the prosecutor could not "raise any inferences of guilt before the jury".
A defendant who is advised of the right to question or cross-examine witnesses against him has been informed that he has a right to confront his accusers. Stephens, who understood that the prosecutor could not ask a "jury" to infer guilt from failure to testify, was, it appears on this record, adequately informed of his right to a trial by jury. In advising of Jaworski rights, as of other 785.7(1)(d) rights, literal compliance is not required.
Our examination of the plea transcripts persuades us that in the cases heretofore discussed in this part IV there was compliance with 785.7(1)(d). In each case the judge informed the defendant of the constitutional and other rights delineated in the rule in such manner as reasonably to warrant the conclusion that the defendant understood what a trial is and that by pleading guilty he was knowingly giving up his right to a trial and the rights and incidents of a trial.
We are particularly impressed with the transcript in the Stephens case where the defendant was further advised, before his plea was accepted, of the sentence that would be imposed and that it would run concurrently with the sentence he was then serving. This defendant, in contrast with the *125 other defendants who did not know whether their sentence wishes or expectations would be fulfilled, understood the consequence of his plea that most concerned him  the precise punishment to which he would be subjected.
In Howell we reverse the conviction and in Burkett we remand for further proceedings in accordance with this opinion.
In Howell, defendant pled guilty to the reduced charge of larceny from a person. Defendant was not advised of the presumption of innocence as required by 785.7(1)(d)(ii). That right is at the core of our criminal process and fundamental to defendant's understanding of a trial.
In Burkett, the defendant pled guilty to assault with intent to rob being armed. The alleged errors include failure to state the plea bargain on the record, and to establish that the plea was freely, understandingly and voluntarily made and failure to advise of the right to compulsory process 785.7(1)(d)(iii). This appears to have been the third plea by defendant before the same trial judge on the same day. It may have been that defendant had been adequately advised of his rights on those occasions, but the record is silent. We remand. The prosecutor shall produce all transcripts of pleas taken from defendant on February 15, 1974. On the basis of all these transcripts, defendant may raise any errors in the plea taking with the trial court in a motion to vacate.

V

INSURING THE PLEA IS VOLUNTARY  "FREELY, UNDERSTANDINGLY AND VOLUNTARILY"
Rule 785.7(2) provides:
*126 "The court shall not accept a plea of guilty or nolo contendere without personally addressing the defendant and determining that the plea is freely, understandingly and voluntarily made."
The rule does not require a judge to make this determination in any particular manner. He need not, contrary to the contention in Burkett, ask the defendant whether his plea of guilty is "freely, understandingly and voluntarily made".
The judge's determination that the plea is freely, understandingly and voluntarily made may be concluded from the judge's acceptance of the plea even though he makes no separate finding of fact on this issue.
The rule permits the judge to take the plea under advisement. GCR 1963, 785.7(4). The failure of the judge in Young formally to accept the plea before sentencing does not justify reversal. By sentencing the defendant the judge implicitly accepted the plea.
VI
INSURING THE PLEA IS VOLUNTARY  PLEA AGREEMENT ON THE RECORD
Rule 785.7(2) provides:
" * * * If the tendered plea is the result of an agreement between the prosecutor and the defendant or his lawyer regarding the entry of a plea, the agreement shall be stated on the record and affirmatively acknowledged by the defendant, his lawyer and the prosecutor."
In Crowder, the plea record shows that the defendant was charged with first-degree murder and pled guilty to manslaughter. The court indicated that any sentence would run concurrently *127 with a North Carolina sentence the defendant was serving. The court asked whether anyone had made "any other promises". The defendant replied negatively.
It is implicit on the record that a bargain was made, but there was a failure to comply with the requirement that the agreement be stated on the record and affirmatively acknowledged by the defendant, his lawyer and the prosecutor.
This omission can, however, in contrast with a failure to comply with the requirements of subdivision (1) concerning advice by the court, be corrected on remand without the ready cooperation of the defendant.
Accordingly, Crowder is remanded to the trial court for a hearing to supplement the plea record regarding the requirements of 785.7(2). The defendant will then be given an opportunity to state his understanding of the agreement. The judge should caution the defendant that if he refers to conversations with his lawyer he will thereby waive the attorney-client privilege and his lawyer will be required to state his understanding of the agreement and what he told the defendant. If the judge determines that the plea agreement was not fulfilled, he shall, in his discretion, either amend the judgment of conviction (if the plea agreement can yet be fulfilled by such an amendment) or permit the defendant to withdraw his plea of guilty and vacate the judgment of conviction. See People v Eck, 39 Mich App 176; 197 NW2d 289 (1972); People v Baker, 46 Mich App 495; 208 NW2d 220 (1973); People v Stevens, 45 Mich App 689; 206 NW2d 757 (1973).
A similar procedure shall be followed where it is claimed that failure to comply with (1)(c) requires reversal because a defendant who was on probation *128 or parole was not advised of the possible sentencing consequences in that regard. In such a case the cause shall be remanded to the trial court and the judgment of conviction set aside if it appears that the defendant was in fact (i) on probation or parole and (ii) subjected to confinement for violation of parole or probation because of his guilty plea conviction. If it does not so appear, the judgment of conviction shall be deemed affirmed.
VII
FACTUAL BASIS
The rule continues (785.7[3]):
"(3) Determining Factual Basis for Plea.
"(a) The court shall not accept a plea of guilty or nolo contendere until it is satisfied that a crime was committed.
"(b) The court shall not accept a plea of guilty until it is satisfied that a crime was committed and, through personal interrogation of the defendant, that defendant participated therein.
"(c) If defendant's description of his actions and any otherwise admissible evidence presented to the court on the record during the plea taking proceedings would not substantially support a finding that defendant is in fact guilty of the charged offense or the offense to which he is pleading, the plea shall be rejected by the court."
In Simpson, the defendant pled guilty to attempted breaking and entering of an occupied dwelling house with intent to commit larceny. He admitted that he attempted to enter a building without permission for the purpose of taking something from the building. The failure to establish that the structure was an occupied dwelling house *129 requires remand because the maximum sentence for breaking and entering an occupied dwelling house is 15 years while the maximum sentence for other breaking and enterings is 10 years (MCLA 750.110; MSA 28.305). On remand the prosecutor shall be given an opportunity to establish the missing element. If he is able to do so and there is no contrary evidence, the judgment of conviction shall be affirmed. If the prosecutor is unable to establish the missing element, the judgment of conviction shall be set aside. If contrary evidence is produced, the matter shall be treated as a motion to withdraw the guilty plea and the court shall decide the matter in the exercise of its discretion. GCR 1963, 785.7(4).
In Neal, the defendant pled guilty to larceny from a person. He said he walked into a drugstore and told an employee not to make any false moves and to put all the money into a paper bag, "then I ran out of the store". The record does not show that the employee put any money into the bag. This case is remanded to accord the prosecutor an opportunity to supply the missing element. See People v Royce Alexander, 17 Mich App 30; 169 NW2d 190 (1969).
In the other cases where factual basis issues were raised we find that the factual basis was adequately established. In each case it appears on the record that the defendant pled guilty to an offense of which he might have been convicted at trial.
In Sanders, the defendant pled guilty to attempted armed robbery. He said that he and a confederate entered a fast food restaurant for the purpose of holding it up and did so. He admitted his partner had a gun but denied he knew this at the time of the robbery. Despite defendant's disclaimer, on his own recital a jury could properly *130 conclude that he and his confederate agreed to commit the crime of robbery and, whether or not the defendant was aware his confederate had a gun, that carrying or using a gun was "fairly within the scope" of the common unlawful enterprise. See People v Pearce, 20 Mich App 289; 174 NW2d 19 (1969); People v Poplar, 20 Mich App 132; 173 NW2d 732 (1969).
In Dillard, the defendant pled guilty to assault with intent to rob being armed. While the record does not establish that he overtly threatened the victim with the pistol, a jury could reasonably draw that inference from defendant's admission that he attempted to take money and used a pistol.
In Young, the defendant pled guilty to assault with intent to rob being armed. Although he denied using the knife in his pocket or showing it to the victim, he admitted carrying a cane in his hand because he had sprained his left ankle. A jury could reasonably infer that the victim was menaced by the cane under the circumstances described by the defendant.
In Harrell, the defendant pled guilty to second-degree murder. She admitted she had shot another woman with a gun. Under the circumstances described in her own recital, a jury could properly infer intent to kill from the fact that she shot the victim with a gun. A factual basis for acceptance of a plea exists if an inculpatory inference can reasonably be drawn by a jury from the facts admitted by the defendant even if an exculpatory inference could also be drawn and defendant asserts the latter is the correct inference.
In Robinson, the defendant was charged with first-degree murder and pled guilty to second-degree murder. He admitted that in anger he set fire to a building which caused the death of two persons. *131 The court did not ask him if he intended to kill anyone when he set the fire. It is asserted that the record does not show the elements of malice and intent to kill. However, it is not necessary for a defendant pleading guilty to second-degree murder to admit that he acted with malice or intended to kill. A jury could properly infer intent to kill, even where the defendant disclaims such intent, from evidence that he intentionally set in motion a force likely to cause death or grievous bodily harm  here setting fire to a building.
In Victor, the defendant pled guilty to felonious assault. He said he took a shotgun and "shot outside up in the air at the girl  well, up in the air. She thought that I shot at her but it was up in the air." A jury could have convicted the defendant of felonious assault on his appraisal of the victim's reaction to the shot.
In Courtney, it is asserted that attempted uttering and publishing is not an offense. While a forged instrument is uttered when it is offered as genuine without regard to whether it is accepted (People v Caton, 25 Mich 388 [1872]), it does not follow that this crime cannot be attempted. A person intent on committing this crime might, for example, enter a bank with a forged instrument and be apprehended as he is withdrawing it from his wallet immediately before uttering it. Such conduct could constitute the crime of attempted uttering and publishing. People v Brandon, 46 Mich App 484; 208 NW2d 214 (1973), is disapproved. We also disapprove of the concurring opinion in People v Norris, 40 Mich App 45, 49; 198 NW2d 430 (1972), which states that attempt to possess a blackjack is not an offense. A person may commit the offense of attempted possession of a prohibited substance or thing. Simpson v United *132 States, 195 F2d 721 (CA 9, 1952); United States v Robles, 185 F Supp 82 (ND Cal, 1960); United States v Rosenson, 291 F Supp 874 (ED La, 1968); United States v Heng Awkak Roman, 356 F Supp 434 (SD NY, 1973).

VIII

NOLO CONTENDERE & FACTUAL BASIS & REASONS FOR NOT INTERROGATING DEFENDANT
The rule continues (785.7[3][d]):
"(d) Where a plea of nolo contendere is made the court shall not interrogate the defendant regarding his or her participation in the crime. However, the court may not accept a plea of nolo contendere unless there has been or the judge thereupon conducts a hearing establishing substantial support for a finding that the defendant is in fact guilty of the charged offense or the offense to which he is offering the plea of nolo contendere and unless the judge first states reasons for believing that the interests of the defendant and the proper administration of justice do not require interrogation of the defendant regarding his participation in the crime."
In Pleasants, defendant went to trial on a charge of assault with intent to rob being armed. At the close of the people's case, he offered a plea of nolo contendere to that charge and a plea of guilty to a second charge of assault with intent to rob being armed, reduced from an original charge of armed robbery arising out of an unrelated incident.
The plea-taking record demonstrates that, although both pleas were taken in one proceeding, the defendant was fully apprised of his rights and understood that by entering the pleas he was *133 waiving his constitutional right to a trial and the rights and incidents of a trial.
The nolo plea was offered midway in the trial on the charge of assault with intent to rob being armed after the people's evidence had been presented. The requisite factual basis for the plea was established by admission without objection of that evidence. The judge failed, however, to "state reasons" for his conclusion that the interests of the defendant and the proper administration of justice did not require interrogation of the defendant regarding his participation in the crime as would have been necessary in a guilty plea:
"[T]he court finds on the basis of the factual information that has been adduced at this hearing that substantial support has been established for finding that the defendant is in fact guilty of the offense to which the plea of nolo contendere is offered to wit, assault with intent to rob and steal being armed, and that neither the interests of the defendant nor the proper administration of justice require interrogation of the defendant regarding his participation in that crime."
In requiring the judge to state reasons for accepting a nolo plea, the rule expresses this Court's preference for interrogation of the defendant by the judge and for reliance on his responses to establish a factual basis.[2] Since direct questioning *134 is not possible where the defendant offering a plea is unable or unwilling to admit his guilt or relate the details of the alleged criminal conduct, the rule requires that there be especial circumstances justifying departure from the norm of direct questioning of the defendant, as in a guilty plea, and acceptance of a plea of nolo contendere.[3]
Among the justifying circumstances that have been suggested are (1) a reluctance on defendant's part to relate the details of a particularly sordid crime (e.g., sexual assault on a child); (2) the defendant's recollection of the facts may be unclear because he was intoxicated (People v Stoner, 23 Mich App 598, 608; 179 NW2d 217 [1970]) or he committed so many crimes of a like nature that he cannot differentiate one from another; and (3) because he wishes to minimize other repercussions, e.g., civil litigation. This enumeration is not meant to be exhaustive.
In this case, the judge's conclusory statement was not a "reason" within the meaning of 785.7(3)(d) which would justify acceptance of a nolo plea and departure from the direct questioning method of establishing a factual basis as in a guilty plea.
We, accordingly, remand this case to the trial court for supplementation of the record in that regard. If the judge is unable to state a reason, the *135 defendant's conviction shall be vacated and the case shall be set for trial.
We do not wish to be understood as suggesting a view on the question whether on this record the trial court could properly state reasons for believing that the interests of the defendant and the proper administration of justice did not require interrogation of the defendant regarding his participation in the crime.
IX
McMiller
In People v McMiller, 389 Mich 425, 434; 208 NW2d 451 (1973), we said:
"[W]e hold that upon the acceptance of a plea of guilty, as a matter of policy, the state may not thereafter charge a higher offense arising out of the same transaction."
We also said:
"A prosecutor can protect himself against being forced to try a defendant on a lesser offense by calling the attention of the judge, before he accepts a plea of guilty, to any failure to comply with the prescribed procedure for taking such a plea."
Trial judges and prosecutors have expressed concern about McMiller creating a costless "breaking of a plea bargain" and an unwarranted encouragement to appeal, a free ride as it were.
Errorless plea taking is the primary responsibility of the trial judge. The oral arguments and colloquy with this Court in connection with the hearing of these cases indicated that as court *136 officers both the prosecutor and the defense attorney should share with the trial judge the responsibility for error-free plea taking.
The prosecutor no less than the defense attorney should be alert to bring to the trial court's attention any errors of omission or commission. Trial courts should be ready and receptive to taking advantage of any such proper advice. The hearings indicated that some judges have discouraged prosecutors in performing this duty, while others welcome this help. It is to be hoped that all prosecutors and all judges will take advantage of this opportunity to improve the administration of justice.
We have amended the rules to facilitate the prosecutor calling to the court's attention any error by adding the following subrule:
785.7(4) Additional Inquiries and Statements by the Court. Upon completing the colloquy with the defendant, the court shall,
(a) ask the prosecutor and the defendant's lawyer whether the court has complied with subrules 785.7(1)-(3). If it appears to the court that it has failed to comply, the court shall do so.
The prosecutor should be specific and clear in calling error to the court's attention. This will permit the court more readily to take proper action and may in some instances, as in advising the defendant of his rights, actually fulfill the requirement of Rule 785.7 that the court personally inform the defendant of certain rights.
If the prosecutor calls the court's attention to plea-taking error before the plea is accepted, McMiller will not apply in the event the trial court vacates the plea on defendant's motion or with *137 defendant's consent or the trial court is reversed on appeal on the basis of the same error.
X
OTHER ISSUES
In Simpson and Cotton, the defendants assert that the judge considered inaccurate information in sentencing them. Such claims should, before appeal, first be presented to the trial court by motion to vacate sentence, supported by appropriate affidavits indicating that the sentencing judge had before him and may have considered inaccurate information. Upon such a showing, the sentencing court shall hear the defendant's claims and shall make such disposition, including vacation of sentence and resentencing, as may be warranted. Compare People v Grimmett, 388 Mich 590; 202 NW2d 278 (1972); People v Lee, 391 Mich 618; 218 NW2d 655 (1974); People v Zachery Davis, 41 Mich App 683; 200 NW2d 779 (1972).
CONCLUSION
This Court is persuaded that simplification and improvement of the language and structure of GCR 1963, 785.7 will facilitate compliance and has adopted, effective in 30 days, a revision of that rule as set forth in appendix A. The attention of the bench and bar is directed to the addition of new subsection (1)(c) and (1)(f) and new subdivisions (4) and (5).
The order directing the Court of Appeals to hold in abeyance decision on the merits of appeals from pleas of guilty and nolo contendere is vacated with immediate effect.
Motions to affirm, reverse or remand in the *138 remaining 90 transferred appeals may be filed in this Court within 30 days of the date of this opinion if the moving party asserts that decision on all issues raised by the appellant in the Court of Appeals is controlled by this opinion. The response to such a motion may not raise new issues, but a motion for leave to raise new issues may be filed with the response. See GCR 1963, 852.2(1)(b).
We affirm the judgments of conviction in all cases except Howell, which is reversed and remanded for trial, and Burkett (part IV), Crowder (part VI), Simpson and Neal (part VII), and Pleasants (part VIII), which are remanded to the trial courts for further proceedings consistent with this opinion. We retain no further jurisdiction.
This memorandum opinion is signed by six Justices. There are separate concurring and dissenting opinions. However, at least four Justices concur in every holding, statement and disposition.
T.G. KAVANAGH, C.J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, and LINDEMER, JJ., concurred.
SWAINSON, J., took no part in the decision of this case.

APPENDIX A

IN THE MATTER OF THE AMENDMENT OF GCR 1963, 785.7
On order of the Court, the need for immediate action having been found, the notice requirements of GCR 1963, 933 were dispensed with, and the following amendment of GCR 1963, 785 (by which subrule .7 is entirely superseded and replaced) was *139 adopted by the Supreme Court on November 7, 1975, to be effective December 7, 1975.
RULE 785. CRIMINAL PROCEDURE.
.1-.6 (Unchanged.)
.7 Pleas of Guilty and Nolo Contendere. A defendant may plead guilty or nolo contendere only with the court's consent. Prior to accepting the plea, the court shall personally carry out subrules 785.7(1)-(4).
(1) An Understanding Plea. Speaking directly to the defendant, the court shall tell him:
(a) the name of the offense to which he is pleading; the court is not obliged to explain the elements of the offense, or possible defenses;
(b) the maximum possible prison sentence for the offense;
(c) if he has been previously convicted of a felony, he may be charged as a habitual offender and the maximum possible sentence may be increased;
(d) the mandatory minimum prison sentence, if any, for the offense;
(e) if he is on probation or parole, he may be sentenced for violating probation or parole;
(f) if the plea is to murder, armed robbery or treason, he cannot be placed on probation;
(g) if his plea is accepted, he will not have a trial of any kind, so he gives up the rights he would have at a trial, including the right
(i) to a trial by a jury;
(ii) to trial by the court if he does not want trial by a jury;
(iii) to be presumed innocent until proved guilty;
*140 (iv) to have the prosecutor prove beyond a reasonable doubt that he is guilty;
(v) to have the witnesses against him appear at the trial;
(vi) to question the witnesses against him;
(vii) to have the court order any witnesses he has for his defense to appear at the trial;
(viii) to remain silent during the trial;
(ix) to not have his silence used against him; and
(x) to testify at the trial if he wants to testify.
(2) A Voluntary Plea.
(a) The court shall ask the prosecutor and the defendant's lawyer whether they have made a plea agreement.
(b) If there is such a plea agreement, the court shall ask the prosecutor or the defendant's lawyer, what the terms of the agreement are and shall confirm the terms of the agreement with the other lawyer and the defendant.
(c) The court shall ask the defendant:
(i) (if there is no plea agreement) whether anyone has promised him anything, or (if there is a plea agreement) whether anyone has promised him anything beyond what is in the plea agreement;
(ii) whether anyone has threatened him; and
(iii) whether it is his own choice to plead guilty.
(3) An Accurate Plea.
(a) If the defendant pleads guilty, the court, by questioning him, shall establish support for a finding that he is guilty of the offense charged or the offense to which he is pleading.
(b) If the defendant pleads nolo contendere, the court shall not question him about his participation in the crime. The court shall:
*141 (i) state why a plea of nolo contendere is appropriate; and
(ii) conduct a hearing, unless there has been one, that establishes support for a finding that the defendant is guilty of the offense charged or the offense to which he is pleading.
(4) Additional Inquiries and Statements by the Court. Upon completing the colloquy with the defendant, the court shall,
(a) ask the prosecutor and the defendant's lawyer whether the court has complied with subrules 785.7(1)-(3). If it appears to the court that it has failed to comply, the court shall do so.
(b) state whether the court has agreed upon the possibility of a plea or the possible sentence with the prosecutor or the defendant or anyone acting in the interests of either, and, if so, that to which the court has agreed.
(5) Acceptance of Plea. The court shall not accept the plea unless it is convinced that the plea is understanding, voluntary and accurate.
(6) Setting Aside the Plea. The court may take the plea under advisement.
(a) Until the court accepts the plea on the record, the defendant may withdraw it as a matter of right.
(b) After the court accepts the plea:
(i) the court may set it aside on defendant's motion; or
(ii) the court may sua sponte set it aside, but only with defendant's consent.
.8-.13 (Unchanged.)
L.B. LINDEMER, J. (concurring and dissenting).
I concur in the memorandum opinion except in the following particulars:
*142 In Neal, this Court was provided with the transcripts of two pleas of guilty by the same defendant before the same judge on the same day. In the first plea, all of the factual elements were elicited from the defendant including the asportation of money. In the second plea, the transcript demonstrates:
"Defendant Neal: I walked into the Sax Discount Drug Store. I waited until everyone left the store. I told the lady behind the counter, don't make no false moves, put all of the money in the paper bag. Then, I ran out of the store.
"The Court: This is the same kind of a situation as the other one but in a different store?
"Defendant Neal: Yes."
In the brief of defendant-appellant, it is stated: "The plea in the instant matter immediately followed the entry of a plea in Wayne County Circuit Court No. 73-58366-FR * * *." Defendant's brief, in commenting upon the transposition from one record to another, recites:
"[W]hile one may attempt by common sense to assume the existence of that which is missing from the record, Rule 785.7(3), (5) prohibits such an assumption."
With Shekoski gone, let it no longer be said that on the facts of this case 785.7 prohibits an assumption of common sense. In this case, neither the defendant, the court nor the prosecution were misled, deceived or prejudiced in any conceivable way. The factual basis was effectively determined. I would affirm.
Courtney is an attempt at sentence bargaining premised upon a plea to a nonexistent offense. Uttering and publishing of a forged instrument *143 has been a completed crime upon proof of the attempt since the earliest days of Michigan case law. See People v Brigham, 2 Mich 550 (1853). To define a crime in terms of an attempt to attempt is contrary to reason and impossible in logic. The plea in Courtney should be vacated.
It is also necessary to dissent to the finding in Pleasants. We have maintained in the memorandum opinion that Shekoski no longer applies to Rule 785.7. Subsection 3 of that rule is entitled, "Determining Factual Basis for Plea." In subsection (d) thereunder, reference to the plea of nolo contendere indicates that the judge must establish "substantial support for a finding that the defendant is in fact guilty of the charged offense". Subsequently, it requires that the judge shall state reasons for believing that the interests of the defendant and the proper administration of justice do not require interrogation of the defendant regarding his participation in the crime. The drafters of the rule placed emphasis on the determination of the factual basis. The record disclosed that defendant and his two attorneys (one on each of two separate charges) were present in the courtroom during the plea taking of a codefendant. We have seen few transcripts in which the plea taking was as painstaking and thorough as this. The plea of nolo contendere was made to a charge on which trial actually had been started and the prosecution's case finished. The trial court recited its conclusion that sufficient interests of the defendant and the proper administration of justice existed to support the acceptance of the plea. The record as a whole must be considered. It furnishes a sufficient basis to constitute compliance with this requirement which does not, after all, go to a matter of constitutional rights.
*144 Finally I concur with the Court's treatment of McMiller regretting only, in my judgment, it does not go far enough. Rather than leave the remains of McMiller writhing in agony, I would prefer it be given a merciful coup de grace.
In his opinion in McMiller, Justice THOMAS G. KAVANAGH said:
"The doctrine of implied acquittal by a jury's verdict convicting the defendant of a lesser included offense, in our view, is not properly applicable to a guilty plea conviction.

* * *
"McMiller was never in peril of being convicted and punished for murder. He has not `run the gantlet' on that charge.
"Unlike a jury trial, a choice was not offered to the independent fact finder to find him guilty of murder, first or second, or manslaughter. It is this `choice' of the fact finder that provides the basis for the implication of acquittal. It is the exposure to it that puts one in `jeopardy'.
"A trial is an adversary procedure. Taking a plea of guilty is not an adversary procedure.
"The result is the same  conviction, and so long as that conviction stands, the effect is identical. A conviction can be set aside only for an error in the procedure whereby it was effected. Logic would say that a defective procedure is a nullity, and hence would dictate that we start all over with a clean slate. But we do not do so in all cases.
"As we have seen, for policy reasons we forbid adversary procedure to expose a person to conviction for a higher offense when the independent fact finder has chosen to find him guilty of a lesser offense. We express this policy in terms of `double jeopardy' although strictly speaking this is an extension of the doctrine of autrefois acquit." 389 Mich 425, 430-431.
Proceeding to a balancing of antagonistic considerations, the Court held at 434:
*145 "For these reasons we hold that upon the acceptance of a plea of guilty, as a matter of policy, the state may not thereafter charge a higher offense arising out of the same transaction."
The holding in McMiller was designed to provide further incentives for trial courts and the prosecution to avoid error. What it has actually done is to provide further incentive for defendants to appeal convictions. When the plea bargain has resulted in a reduction from the charge originally made, every reversal results in a recommencement of the process with a lower potential punitive ceiling than before. With appellate counsel provided at public expense in the event of indigency, the defendant has absolutely nothing to lose.
The goals of this judicially-born policy have not been achieved. Quite the opposite. More importantly, this policy is for the Legislature, not the Court. I would overrule McMiller.
COLEMAN, J. (concurring in part).
I concur with the opinion of Justice LINDEMER with respect to Pleasants and McMiller.
T.G. KAVANAGH, C.J. (concurring in part).
I concur with the opinion of Justice LINDEMER with respect to Courtney.
T.G. KAVANAGH, C.J., and LEVIN, J. (concurring and dissenting).
We would affirm in Howell. We concur, for a different reason, in remand in Burkett.
In Howell, the failure of the judge to inform the defendant of the right to be presumed innocent until proven guilty beyond a reasonable doubt does not preclude a determination that Howell understandingly waived his right to a trial.
The failure of the judge in Burkett to inform the defendant of his right to compulsory process and *146 to advise him that if he chose to remain silent no inferences adverse to him could be drawn does not preclude a determination that Burkett understandingly waived his right to trial.
In Burkett, the plea record shows that the defendant was charged with robbery armed and pled guilty to assault with intent to rob being armed. In Burkett, as in Crowder, it is implicit on the record that a bargain was made, but there was a failure to comply with the requirement that the agreement be stated on the record and affirmatively acknowledged by the defendant, his lawyer and the prosecutor. Remand to the trial court for a hearing to supplement the plea record regarding the requirements of 785.7(2) is the appropriate remedy in this case, as set forth in part VI (Insuring the Plea is Voluntary  Plea Agreement on the Record) of the memorandum opinion of the Court.
WILLIAMS, J. (concurring in part, dissenting in part).
The memorandum opinion reaffirms this Court's commitment to ensure that pleas of guilty are freely and understandingly made through the enforcement of the requirements of Rule 785.7. Moreover, we have made every effort to make the rule workable, so that the administration of justice might operate as smoothly as possible while straining under the burden of an extremely heavy criminal caseload.
My disagreement with my colleagues is limited. First, I believe that failure to inform the defendant of any of the rights specified in the rule must, not merely may, constitute reversible error. Consequently I would further reverse in the following cases (p 123, ante) where the plea-taking judge omitted one or more of those rights in his colloquy:
People v Anderson
*147 People v Buck
People v Smith
People v Nicholson
People v Neal
People v Adkins.
Second, I feel that the plea-taking court was not clear enough in stating the sentence consequences in certain cases. The sentence consequences of a plea of guilty are at the core of what plea-bargaining is all about. For this reason, it is essential, if a plea is to be freely and understandingly made, that the defendant be informed of the major sentence consequences of the guilty plea. Furthermore, this requirement is consistent with the sound administrative policy of discouraging frivolous appeals of plea-based convictions, for a defendant who has been informed of the possible sentence consequences of the plea is less likely to appeal simply on the basis of his disappointment with the sentence received.
Thus, I would reverse in the following cases (recognizing that amendments to Rule 785.7 will require for the future the action I found missing in Hord):
People v Hord (p 118, ante)
People v Torres (p 118, ante)
Third, while I agree that the plea-taking judge may group the statement of defendant's rights into a single statement, I believe that the judge must elicit, on the record, from the defendant an indication that the plea is freely, understandingly, and voluntarily made. Because I feel that the plea-taking judge failed in that respect in People v Bauer (p 114, ante), I would reverse in that case.
NOTES
[1] See McCormick, Evidence (2d ed), § 342, p 806; 9 Wigmore, Evidence (3d ed), § 2511, p 407; In re Winship, 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970); Mullaney v Wilbur, 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975).
[2] "Direct questioning enables the judge to determine how the defendant views the facts. By the defendant's answers to the judge's questions, the judge, a trained observer, can himself appraise whether the plea is, indeed, a truthful plea. It permits the judge, who will be sentencing the defendant, to get the feel of the situation.

"Direct questioning of the defendant is informative; it permits the judge to satisfy himself as to the substantiality and justification for the prosecution and that it is consistent with the sound administration of justice to permit the defendant to plead guilty. This does not mean that the judge must decide that the defendant is guilty before he agrees to accept the plea. Indeed, a plea of guilty may be accepted even though the defendant is unsure of his guilt and even where he denies his guilt if after careful inquiry the judge satisfies himself that there is a substantial factual basis for the plea and that the plea represents a well-considered and well-advised choice by the defendant." (Emphasis by the author.) People v Coates, 32 Mich App 52, 70; 188 NW2d 265 (1971), LEVIN, J., dissenting.
[3] Direct questioning is not an absolute. As set forth in Part VII of this opinion, where the judge makes a conscientious effort to establish a factual basis for a plea of guilty by direct questioning of the defendant, omissions in the record recital of the factual basis may be established in some other manner. Similarly, the rule permits a departure from the direct questioning method of establishing a factual basis where there are especial circumstances justifying acceptance of a nolo plea.