PEOPLE v SYLVESTER

Docket No. 48090. Submitted November 14, 1980, at Lansing.—Decided February 4, 1981. Leave to appeal applied for.

James R. Sylvester was convicted, on his plea of guilty, of second-degree murder, Saginaw Circuit Court, Fred J. Borchard, J. The defendant later sought to withdraw his plea, claiming he had procured witnesses who would "mitigate the circumstances" of the shooting. The motion to withdraw, and a second motion for a new trial, were denied, and the defendant appeals. *Held:*

1. While motions to withdraw guilty pleas are to be treated with great liberality, the denial of the motion in this case was proper. The defendant's plea was voluntary, he has not claimed innocence, he had a long period of time in which to procure his witnesses, and he offered his plea on the day scheduled for trial after the prosecution invested substantial sums to subpoena its own witnesses.

2. The trial court's failure to advise the defendant at the plea-taking proceeding that second-degree murder is a nonprobationable offense was harmless error, because the record indicates that the defendant understood the sentencing consequences of his plea.

Affirmed.

1. CRIMINAL LAW — GUILTY PLEAS — WITHDRAWAL OF PLEA.

Withdrawal of a defendant's guilty plea is a matter of right when it is requested prior to the court's acceptance; after acceptance,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 503-506.

Withdrawal of plea of guilty or nolo contendire, under Rule 32(d) of Federal Rules of Criminal Procedure before sentence. 6 ALR Fed 665.

[3] 21 Am Jur 2d, Criminal Law § 487 *et seq.*

Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof. 97 ALR2d 549.

Construction and application of Rule 11(c) of Federal Rules of Criminal Procedure, as amended in 1975, requiring court to give certain advice to defendant before accepting plea of guilty or nolo contendere. 41 ALR Fed 874.

withdrawal is within the sound discretion of the court, but a motion to withdraw is to be treated with great liberality and should be granted where a defense of innocence is asserted, the request is not obviously frivolous, and is made before commencement of trial and before sentence.

2. CRIMINAL LAW — GUILTY PLEAS — WITHDRAWAL OF PLEA.

Denial of a defendant's request to withdraw a guilty plea was not error where the defendant did not claim innocence, but offered to produce new witnesses, his plea was voluntary, the defendant had a long period in which to procure the witnesses, and the plea was given on the day scheduled for trial after the prosecution had invested substantial sums to subpoena its own witnesses.

3. CRIMINAL LAW — GUILTY PLEAS — SENTENCING — HARMLESS ERROR — COURT RULES.

Failure of a trial court to advise a defendant at a guilty plea proceeding that the offense to which the defendant was pleading, second-degree murder, was a nonprobationable offense was error because the court rule governing guilty pleas was not strictly complied with, but was harmless where the defendant indicated his understanding of the sentencing consequences of his guilty plea (GCR 1963, 785.7[1][f]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *William D. White,* Assistant Prosecuting Attorney, for the people.

*Terence R. Flanagan,* Assistant State Appellate Defender, for defendant on appeal.

Before: M. J. KELLY, P.J., and ALLEN and C. L. HORN,* JJ.

M. J. KELLY, P.J. Defendant was charged with open murder, contrary to MCL 750.316; MSA 28.548, as a result of the fatal shooting of Arthur Sanders in Saginaw, Michigan, on April 24, 1978. On January 17, 1979, the scheduled date of defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant's trial, the parties reached agreement on a plea bargain. The terms of the agreement required the defendant to plead guilty to second-degree murder, contrary to MCL 750.317; MSA 28.549, and the prosecutor to drop the open murder charge and other charges relating to a stolen credit card. On March 30, 1979, the scheduled date for sentencing, the defendant moved to withdraw his plea under a claim that he had procured witnesses to "mitigate the circumstances" of the shooting. The trial court held that the defendant's plea had been voluntary and accurate and denied the motion. A subsequent motion for a new trial was also denied. Defendant appeals as of right.

Defendant first alleges error in the trial court's decision denying his motion to withdraw the guilty plea. He argues that the reasons asserted for withdrawal were not frivolous, that a claim of innocence was made and that the "great liberality" standard for granting such motions should have been applied to grant his petition. We disagree.

In *People v Bentley,* 94 Mich App 19, 21-22; 287 NW2d 355 (1979), the majority summarized the criteria a trial court is to apply to a motion to withdraw a prior guilty plea:

"In Michigan, a defendant's withdrawal of her guilty plea is a matter of right when it occurs prior to the court's acceptance. *People v Serr,* 73 Mich App 19; 250 NW2d 535 (1976). After the plea has been accepted, withdrawal is within the sound discretion of the court. *Id.* However, such motions are to be treated with great liberality. *People v Hatcher,* 83 Mich App 307; 268 NW2d 389 (1978), *People v Price,* 85 Mich App 57; 270 NW2d 707 (1978). In this regard, our Supreme Court has said that where '* * * a defense of innocence is asserted at the time of a request to withdraw a plea, and the request is not obviously frivolous and is made

before the commencement of trial and before sentence, the plea *[sic]* should be granted'. *People v Bencheck,* 360 Mich 430, 433; 104 NW2d 191 (1960), *People v Lewandowski,* 394 Mich 529; 232 NW2d 173 (1975), *People v Love,* 72 Mich App 413; 250 NW2d 94 (1976), *People v Hayes,* 70 Mich App 580; 246 NW2d 154 (1976)."

See also *People v Boomer,* 99 Mich App 353; 297 NW2d 663 (1980).

In *Bentley,* the court found valid the defendant's motion to withdraw, where the petition was accompanied by a claim of innocence and record support for the defendant's assertion of a plea made under extreme emotional distress. The instant facts differ markedly from those in *Bentley.* Initially, we note that the defendant's motion was not truly accompanied by a claim of innocence. Rather, defense counsel informed the lower court that the newly found witnesses would "mitigate the circumstances" of the shooting. Also, the record does not exhibit evidence of the defendant's inability to produce such witnesses at trial which may have led to his consequent decision to enter a plea to second-degree murder. Our review of the record indicates a plea given voluntarily, without coercion by the prosecutor. In light of this voluntary plea and the defendant's explicit description of the circumstances surrounding the shooting, we conclude that the rationale for withdrawal asserted below was unsubstantiated. Without more, the defendant's bare allegation that new witnesses were available did not require the lower court to exercise its discretion in favor of the motion to withdraw.[1]

---

[1] During oral arguments, the defendant's appellate counsel cited *People v Knight,* 94 Mich App 526; 288 NW2d 649 (1980), as additional support for his position that the appropriate standard for review of motions to withdraw was not applied. We note two distin-

The instant case more closely resembles the facts in *People v Price,* 85 Mich App 57; 270 NW2d 707 (1978). In *Price,* the court found frivolous the defendant's motion for withdrawal based upon a claim that pretrial incarceration induced the plea. In evaluating the validity of the plea, entered on the date scheduled for trial, the court noted the lengthy period of time for preparation accorded the defendant (over one year) and the substantial investment of funds incurred by the prosecution to prepare for trial. The court viewed defendant Price's motion for withdrawal as a mere delaying tactic, not included within the standard of great liberality.

The present decision resembles *Price* in two significant aspects. First, the defendant had a period of almost nine months during which to procure his witnesses. Second, his plea was given on the day of trial after the prosecution invested substantial sums to subpoena its own witnesses, two of whom were to come from Los Angeles. As in *Price,* we find the facts herein render the standard of great liberality not applicable to the lower court's decision. Thus, no error arose from the trial court's refusal of defendant's motion to withdraw.

The defendant secondly claims reversible error arising from the trial court's failure to inform him that second-degree murder is a nonprobationable offense, as required by GCR 1963, 785.7(1)(f). At

guishing factors between *Knight* and the present case. In *Knight,* the defendant had almost no recollection of the circumstances comprising the criminal acts to which he plead guilty, unlike the defendant herein. Further, while we agree with the *Knight* court's interpretation of *People v Moore,* 74 Mich App 195; 253 NW2d 708 (1977), as requiring a trial court to inquire of a defendant the reasons for his motion to withdraw, the instant defendant was given a full opportunity to explain the basis for his request. Thus, the trial court was fully apprised of the rationale for defendant's motion to withdraw.

the plea-taking, the trial court questioned defendant in pertinent part as follows:

"THE COURT: Your attorney has indicated to the Court that you are entering a plea of guilty to an amended Information which includes Count II and is murder in the second degree, is that correct?

"THE DEFENDANT: That's correct.

"THE COURT: Are you pleading guilty to that charge?

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you discussed the matter of this plea with your attorney?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand the nature of the charge made against you?

"THE DEFENDANT: Yes, sir.

"THE COURT: And are you freely and voluntarily pleading guilty to that charge?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand that you are pleading guilty to a felony and the maximum penalty is life or any term of years in prison?

"THE DEFENDANT: Yes."

This Court has split on the precise issue raised by the defendant. In *People v Lendzian,* 80 Mich App 323; 263 NW2d 360 (1977), the court, in a case not involving a sentence agreement, found no reversible error arising from the trial court's failure to comply with GCR 1963, 785.7(1)(f). The court concluded that because the trial court read the armed robbery statute to the defendant (which statute contains the possible maximum and minimum sentences imposable), and defendant expressed his understanding of the potential punishment, no strict adherence to the rule was required.[2] The more recent case of *People v Earl*

---

[2] The author considers it inconceivable that the sentence consequences were not fully discussed between able defense counsel and

*Jones,* 94 Mich App 232; 288 NW2d 385 (1979), reached a similar conclusion. The *Jones* court also noted that the defendant was a previous offender with some presumed knowledge of the law, that he was on parole and knew the consequences of his parole violation, and that the offense (second-degree murder) was a grievous one, as factors eliminating any expectation of probation. A more recent panel, in *People v Thalacker,* 99 Mich App 372, 375; 297 NW2d 670 (1980), reached a different result:

"We are forced to conclude that both *Lendzian* and *Jones, supra,* were wrongly decided. The clear import of GCR 1963, 785.7(1)(f) is that a defendant must be told that he will serve some time in prison if he chooses to enter a plea. Under *[People v Freeman,* 73 Mich App 568; 252 NW2d 518 (1977)], that requirement is excused where there has been a sentence bargain, for defendant then knows of his prison term prior to entering his plea. Despite the gravity of a defendant's crime or his prior experience with the judicial system, we cannot infer from a silent record that defendant knew he would serve time in jail and thus render the court rule nugatory."

We disagree with the restrictive ruling of *Thalacker* and hold that the trial court's error herein was harmless. In so holding, we note the conclusion of the Supreme Court in *Guilty Plea Cases,* 395 Mich 96, 113; 235 NW2d 132 (1975), regarding general adherence to the rule's requirements:

"We conclude that the policy expressed in *[People v Shekoski,* 393 Mich 134; 224 NW2d 656 (1974)], that any failure of strict adherence to the procedure and practice specified in Rule 785.7 mandates reversal, should be

the defendant, but the court rule requires the advice out of the mouth of the judge.

modified. Noncompliance with a requirement of Rule 785.7 may but does not necessarily require reversal.

"Whether a particular departure from Rule 785.7 justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance."

This general holding is not applicable to all sections of the disputed court rule. In *Guilty Plea Cases,* the majority specifically held that noncompliance with subsection (b) of the rule "will continue to require reversal". *Id.,* 118. However, we can discern no intent from *Guilty Plea Cases* that the holding quoted should not apply to the new court rules issued as part of the Supreme Court's opinion, specifically GCR 1963, 785.7(1)(f).

The present case closely resembles *Lendzian, supra.* As in *Lendzian,* the defendant indicated his understanding of the sentencing consequences of his decision to enter into a plea bargain. Where the defendant so understood the charge and sentencing imposable by the second-degree murder statute, the trial court's failure to strictly comply with GCR 1963, 785.7(1)(f) does not constitute reversible error.

Affirmed.