## PEOPLE v HALL

Docket No. 58668. Decided December 31, 1976. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the decision of the Court of Appeals and reinstated the conviction. Rehearing denied 400 Mich 952.

Edward D. Hall was convicted on his plea of guilty in Washtenaw Circuit Court, Ross W. Campbell, J., of armed robbery. The defendant's motion to withdraw his plea on his allegation that the plea was induced by a promise of leniency in sentencing made by the prosecuting attorney was denied by William F. Ager, Jr., J. The Court of Appeals, M. J. Kelly, P. J., and V. J. Brennan, J. (Danhof, J., dissenting), reversed (Docket No. 21348). The people apply for leave to appeal. *Held:*

The trial court found that no promise of leniency had in fact been made to the defendant by the prosecuting attorney, and thought the record belied a conclusion that leniency had even been suggested to the defendant. The Court of Appeals erred in substituting its judgment for that of the trial court in determining whether the plea was induced by a promise.

The decision of the Court of Appeals is reversed and the conviction reinstated.

Justice Levin would deny leave to appeal. The record and the memorandum opinion indicate that, measured by any standard, the Court of Appeals correctly reversed the conviction. If, as the circuit judge found, the prosecutor advised the defendant's lawyer that he would offer no inducement for the plea, then the lawyer's advice to the defendant was inaccurate, whether he advised that the prosecutor *would* recommend a ten-year minimum or *would probably* so recommend. A plea induced by an inaccurate representation concerning possible leniency should not be permitted to stand. It is enough that the defendant's lawyer induces a plea of guilty by a statement that a concession was promised by a prosecutor, without proof that the promise was in fact made. The defendant's failure to claim innocence is not properly a factor; even a guilty defendant is entitled to relief when there is an unfulfilled plea bargain.

Chief Justice Kavanagh concurred with Justice Levin.

68 Mich App 32; 241 NW2d 750 (1976) reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* Senior Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Barbara R. Levine)* for defendant.

PER CURIAM. Defendant alleges that his guilty plea was induced by his attorney's representation that the prosecutor had promised to recommend a minimum sentence of ten years. Defendant and his attorney told the circuit judge at the plea proceeding that the plea was not the result of any promises. Defendant was in fact sentenced to a minimum term of 20 years.

A different circuit judge later conducted an evidentiary hearing on his claim. Defense counsel testified that the prosecutor and an assistant prosecutor had said they would probably not recommend more than a ten-year minimum. He relayed this exact information to the defendant. Defendant testified that the attorney did not use the word "probably"; he admitted he lied at the plea, when confronted with his denial at that time of any promise or inducement. Defendant's mother testified that the attorney had told her that the defendant would not get more than a ten-year minimum.

The prosecutor and an assistant denied any promise to defendant's attorney. Both said that only the prosecutor made minimum sentence recommendations, these were disclosed only in writing, and they so informed defense counsel before the plea. The record also discloses that the prosecutor recommended more than a ten-year minimum, that defense counsel was aware of that fact before sentencing but did not advise the defendant to withdraw his plea, and that neither defense

counsel nor defendant objected at the sentencing to this recommendation by the prosecutor.

*In re Valle,* 364 Mich 471; 110 NW2d 673 (1961), involved a defendant who alleged his guilty plea was induced by the prosecutor's promise as to his sentence, stated by defendant's attorney on the record at the plea proceeding. The prosecutor later denied any promise was made. We vacated defendant's conviction:

"If the evidence establishes that the prosecutor or the judge has made a statement which fairly interpreted by the defendant (in our case of foreign extraction and with only an eighth-grade education, presumably in court for the first time) is a promise of leniency, and the assurance is unfulfilled, the plea may be withdrawn and the case proceed to trial." 364 Mich 471, 477–478.

We recently reaffirmed this principle where the record disclosed that the plea was induced by a promise of leniency, later unfulfilled, by the prosecutor of an adjoining county. *People v Brooks,* 396 Mich 118; 240 NW2d 1 (1976).

The Court of Appeals concluded in this case:

"On the basis of the entire transcript, the affidavits and the inferences drawn from both, *it is our opinion* that the defendant was told that the prosecutor would recommend a ten-year minimum, that he relied upon that representation; but the recommendation was, in fact, for a 20-year minimum, which recommendation was adopted by the trial court and the defendant sentenced thereon." 68 Mich App 32, 36; 241 NW2d 750 (1976). (Emphasis added.)

The Court of Appeals relied upon Justice Levin's concurring opinion in *People v Byrd,* 12 Mich App 186, 229–230; 162 NW2d 777 (1968):

"[T]he test should not be whether the defendant establishes the truth of his claim by a preponderance of the evidence. Rather, his claim should be deemed established, and the plea set aside, if the evidence causes the judge to entertain a reasonable doubt whether the plea was 'encouraged' by a false promise of leniency in sentencing. Under a reasonable doubt standard, the court need not wholly adopt the defendant's story, or wholly reject the attorney's story. He may simply conclude that, on the evidence, he is in doubt, and, the defendant being entitled to the benefit of that doubt, he will set aside the plea and allow the defendant to stand trial." 12 Mich App 229–230.

We specially note, however, Justice LEVIN's language above "if the evidence causes the judge to entertain a reasonable doubt". As Chief Judge DANHOF noted in dissent:

"[T]he trial court is in the best position to determine whether or not the plea of guilty was induced by promises of leniency because it can observe the demeanor of the conflicting witnesses in determining their credibility." 68 Mich App 32, 38.

The circuit judge in this case concluded that no promise had in fact been made by the prosecutor or any member of his staff. He thought the sentencing record belied a conclusion that a promise of a ten-year minimum recommendation had even been suggested to defendant. He therefore denied the motion to withdraw the plea.

The Court of Appeals majority erred in substituting its judgment for that of the circuit judge. It was the circuit judge's responsibility to determine whether the plea was induced by a promise of leniency which went unfulfilled. *Guilty Plea Cases,* 395 Mich 96, 127; 235 NW2d 132 (1975).

In lieu of leave to appeal, pursuant to GCR 1963,

853.2(4), we reverse the judgment of the Court of Appeals and reinstate the defendant's conviction and sentence. The prosecutor's emergency motion for stay becomes moot thereby and is denied.

Williams, Coleman, Fitzgerald, Lindemer, and Ryan, JJ., concurred.

Levin, J. *(dissenting)*. I would deny leave to appeal.

The record and the memorandum opinion indicate that, measured by any standard, the Court of Appeals correctly reversed this conviction.

The memorandum opinion states:

i) the prosecutor and his assistant testified that they told Hall's lawyer they would make no recommendation except "in writing [to the judge]", and

ii) Hall's lawyer testified that he informed Hall that the prosecutor "would probably not recommend more than a ten-year minimum".

Plainly, if—as the circuit judge found—the prosecutor told Hall's lawyer that he would offer no inducement for the plea, Hall's lawyer did not speak accurately in advising Hall, in a successful effort to persuade him to plead guilty, that the prosecutor would probably not recommend more than a ten-year minimum.

Whether or not Hall should be given the benefit of a reasonable doubt—as the Court of Appeals declared—on the issue whether his lawyer told him that the prosecutor *would* recommend a ten-year minimum or *probably* would so recommend, his plea of guilty, induced by an inaccurate representation concerning possible leniency, should not be permitted to stand.

This is not a case of a lawyer simply expressing

his own opinion or expectation regarding the sentence, but of a representation by a lawyer purportedly based on conversations with the prosecutor and his assistant which they testified and the circuit judge found never took place.

# I

The memorandum opinion declares:

"Defense counsel testified that the prosecutor and an assistant prosecutor had said they would probably not recommend more than a ten-year minimum. He relayed this exact information to the defendant. Defendant testified that the attorney did not use the word 'probably' * * * .

"The prosecutor and an assistant denied any promise to defendant's attorney. Both said that only the prosecutor made minimum sentence recommendations, these were disclosed only in writing [to the judge], and they so informed defense counsel before the plea."

The recommendation was for a 20-year minimum. The defendant was sentenced by the trial judge to serve 20 to 40 years.

Defendant was represented at the trial level by a member of a Detroit law firm. Counsel's asserted familiarity with the procedures in the Recorder's Court and unfamiliarity with the differing practices in Washtenaw County may have been a source of the misunderstanding.

The State Appellate Defender's Office was appointed to represent Hall on appeal, and moved to file a delayed motion to withdraw guilty plea which was supported by an affidavit prepared and signed by the lawyer who represented Hall when his plea was offered, stating:

"4. That I then proceeded to negotiate with the

prosecutor to see if I could have the defendant plea to assault with the intent to rob being armed.

"5. That the assistant prosecutor Parker or Harper advised me that the prosecutor would not accept a plea to a lesser offense *but there was a possibility of negotiating on the sentence.*

"6. That on or about April 4, 1973, I, * * * , attorney for Edward D. Hall met with the prosecutor and the assistant where *the prosecutor stated that he would not recommend any more than ten (10) years as a minimum.*

"7. That on the day of sentencing, May 4, 1973 the judge showed me a recommendation by the prosecutor that the defendant receive a sentence of 20 to 40 years.

"8. That *I had told the defendant that the prosecutor said he would not recommend more than ten (10) years as a minimum."* (Emphasis added.)

At the hearing, defendant's lawyer testified:

"*A.* Well, yes, I'd like to go back for a minute. Yes, I did. The prosecutor told me they would not give a reduced plea and I said, what about sentence, and it was my information that the prosecutor has to make a recommendation and *he said, well, we'll recommend no more than ten as a minimum.* I said, I'm not worried about the maximum, I'm worried about the minimum. And, this is what we talked about, what type of recommendation would be made in this particular case. And, I went then and I talked to my client. And, I said, there's a possibility—I don't know but the prosecutor—I said there's no assurance that this might happen because you don't get assurances like this. But, *they said they probably wouldn't recommend any more than ten as a minimum.* (Emphasis added.)[1]

---

[1] His testimony continued:

"*Q.* Who was it that you talked with, do you know who it was?

"*A.* Mr. Farmer and that gentleman right there. (Indicating.) I was in that gentleman's office.

"*Q.* That's Mr. Delhey?

"*A.* Yes, I guess that's him.

"*Q.* What did they say they could do for you, for your client?

The prosecutor testified that he had never met
with defendant's lawyer or discussed the matter
with him and that "[i]t's our office policy in any
discussion with defense attorney that we'll not
inform them and that goes for myself and my
assistants as to what any recommendation will be

"*A.* They could—said they could only make recommendations is all
they said.

"*Q.* And, what recommendations did they say they'd make?

"*A.* No more than ten as a minimum.

"*Q.* That's what they said?

"*A.* This is what I understood them to say.

"*Q.* Okay. You understood that they said that in this case that if
the defendant pled guilty that they would recommend no more than
ten years as a minimum, is that right?

"*A.* That's true.

"*Q.* All right. Now, you went and talked to your client who was in
the Wayne County jail?

"*A.* No, he was in the Washtenaw County jail.

"*Q.* Washtenaw County, I'm sorry. You conveyed to him what the
prosecutor said?

"*A.* Yes, I told him that the prosecutor said that he probably
wouldn't recommend any more than ten as a minimum and I said, I
cannot be sure that this is what it would be, but I'm assuming that is
what they will do. That's all.

"*Q.* You were not promising any sort of definite sentence?

"*A.* No, I can't promise any definite sentence because I told him
that the final sentence would be up to the judge. If the judge would
make the final determination as to how much time you'll get, and
how much time you'll not get.

"*Q.* But you did tell him that the prosecutor would recommend ten
—not more than ten at the minimum?

"*A.* Not more than ten at the minimum.

\* \* \*

"*Q.* Did you not in the affidavit state that you told the defendant
that the prosecutor said that he would not recommend more than ten
years as a minimum?

"*A.* Yes, I did.

"*Q.* Now is that what you said to the defendant or was it that
probably they would recommend ten years as a minimum?

"*A.* Are you referring to whether I used the word probably at the
time or if I left that out? This I can't recall, but I know I talked to the
defendant. I talked to him at some length and I told him that I was
not sure what type of sentence he would get. The prosecution proba-
bly would make a recommendation of no more than ten."

Defendant's lawyer continued to vacillate throughout the remain-
der of his testimony on whether the word "probably" had been used.

on sentence to insure adherence to that policy. I do all the recommendations in writing myself".

The chief assistant prosecutor testified that he recalled meeting defendant's lawyer, and that he made no promise regarding the sentence. He added that he told defendant's lawyer that "you're not in Wayne County". "I'm not allowed to make recommendations. I never make recommendations and just can't do it and won't do it. And, he said, what about your boss, and I said, he won't tell you about the recommendations before time."[2]

The defendant's lawyer was aware of the prosecutor's actual recommendation for a minimum sentence of 20 years before the time of sentencing but nothing was said by him at the time of sentencing.[3]

The circuit judge found "that neither the prosecuting attorney nor any member of the prosecuting attorney's staff made any promises to counsel for the defendant to recommend a minimum sentence of ten years". He recounted the testimony of defendant's lawyer that the prosecutor and his chief assistant advised him that they *"probably wouldn't recommend more than ten years"* and

---

[2] He also testified that defendant's lawyer said, "what do you have in the way of any idea what kind of sentence he might get in this case. I point blank told him, absolutely none. I do not make recommendations. His client is not worth the wrath from my boss as to some kind of recommendation which I tell almost all of them that I'm not allowed to give recommendations".

[3] The circuit judge added, "He further stated in one of his affidavits that he notified the defendant, *prior to sentence,* that the prosecutor 'had crossed him up' and had recommended more than ten years." (Emphasis by the court.) I cannot find such an affidavit by defendant's lawyer; there is an affidavit of the defendant which states that his lawyer "visited me a day or two after sentencing at Jackson Prison. He said that the prosecutor had crossed him; but that his word (my attorney's) was good and I would go back and get my time cut to ten years."

Defendant's lawyer testified that he did not inform his client of the actual sentencing recommendation until after he was sentenced.

that this was repeated to Hall.[4] He pointed out
that during the plea-taking colloquy Hall had
answered negatively the question "[h]ave any such
promises or inducements been made to you?" and
affirmatively the question did he "understand that
if any promises or inducements have been made"
they are not binding on the court and that the
court alone makes the sentencing decision?

The circuit judge concluded:

"It should also be pointed out that the defendant has
never claimed that he was innocent of the charge to
which he pled guilty. *Even if his attorney had advised
him that the prosecuting attorney had said that he
would only recommend ten years* (and it should be
remembered that defendant's counsel testified that he
told his client that the prosecutor 'probably' would
make this recommendation), *the sentence should stand*
as the sentencing judge should be able to rely on the
record in accepting a plea and in imposing a sentence."
(Emphasis added.)

## II

The circuit judge erred in counting as a factor
the defendant's failure to claim innocence. If there
was an unfulfilled plea bargain the defendant was
entitled to relief even if he was guilty of the
offense. In none of the decisions of the United
States Supreme Court, this Court, or of the Court
of Appeals granting relief for unfulfilled plea bar-
gains is there any suggestion that the defendant

---

[4] He believed but wasn't sure that he told his client that only the
judge makes the final determination. "He couldn't recall of a cer-
tainty that the prosecutor said 'probably.' He testified in cross-exami-
nation that he did believe that the prosecutor used the word 'proba-
bly' and that he told the defendant that he *thought* the prosecutor
would recommend ten years or less. He believed that the word
'probably' was used." (Emphasis by the court.)

must assert innocence or that his guilt may estop
him from relying on the bargain.

While it would be desirable if we could achieve
an iron-clad record and if we could rely absolutely
on a defendant's denial at plea taking of promise
or inducement, such a rule would be inconsistent
with both the decisions of the United States Su-
preme Court and of this Court. Defendants, edu-
cated by years of hypocrisy regarding plea bar-
gaining and the practice of permitting defendants
to obtain the benefit of a bargain only if they
denied that a bargain had been entered into, still
believe that they must deny the bargain to obtain
it.

The defendant's lawyer was also standing before
the judge. He is an officer of the court. He signed
an affidavit and testified that he had entered into
negotiations with the prosecutor and his chief
assistant who said that they would not recom-
mend, or probably not recommend, more than ten
years and that he had repeated this to his client.
It was the lawyer's duty, at least as much as
Hall's, to correct the record when the judge asked
about "promises or inducements". He too must
have thought it was better not to reflect on the
record the conversations he said he had with the
prosecutor and his assistant.

### III

A promise by a prosecutor that he will or will
not make sentencing recommendations may consti-
tute an inducement for a plea.

In *Santobello v New York,* 404 US 257, 262; 92 S

Ct 495; 30 L Ed 2d 427 (1971), the unfulfilled promise was that "no sentence recommendation would be made by the prosecutor".[5]

In *In re Valle,* 364 Mich 471, 474, 475; 110 NW2d 673 (1961), the defendant was charged with kidnapping and breaking and entering. In offering a plea to breaking and entering his lawyer stated in open court that he had "talked with the prosecuting attorney who informs me that under the circumstances he would not be opposed to probation with a 6-months' jail term". The defendant was sentenced to serve a term of 5 to 15 years.

The prosecutor argued that the circuit judge had "minutely" questioned the defendant to determine whether his plea was free and voluntary and contended that there was no "promise". In setting aside the conviction, this Court said that this was not a case where the "asserted plea bargain" depends entirely upon the testimony of the defendant. "Here the crucial point is a statement made in open court, by an officer thereof."

The court recognized that there had been no promise or bargain for probation with a six-

---

[5] The cause was remanded to the state court "to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty". 404 US 257, 263.

The ABA Minimum Standards, Pleas of Guilty (Approved Draft, 1968), provides:

"The prosecuting attorney, in reaching a plea agreement, may agree to one or more of the following, as dictated by the circumstances of the individual case:

"(i) to make or not to oppose favorable recommendations as to the sentence which should be imposed if the defendant enters a plea of guilty or nolo contendere." § 3.1(b)(i).

Federal Rule of Criminal Procedure 11(e)(1)(B) authorizes agreements that the attorney for the government will

"make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court".

months jail term. It was enough that a statement had been made which "fairly interpreted by the defendant" was a "promise of leniency", and that it had not been fulfilled.

Nor was the plea saved by the defendant's responses to the inquiries whether "any promises" had been made and was he pleading "freely and voluntarily":

"Here, however, the people deny that any such bargain was made. The language heretofore quoted, namely, 'I have talked with the prosecuting attorney who informs me that under the circumstances he would not be opposed to probation with a 6-months' jail term; and the defendant wishes to enter a plea of guilty to the second count' is, obviously, susceptible of various interpretations. It is true that an astute lawyer would realize, as the people point out, that the prosecutor could not bind the judge, and, indeed, that the prosecutor's nonopposition to jail-plus-probation is not the same as his approval or recommendation thereof. But the inquiry in these circumstances is not what an astute lawyer would take as the meaning of the words used. In this situation we do not require that the promise of leniency be established beyond any doubt whatever, or even beyond any reasonable doubt in the mind of one learned in the law and acquainted with judicial administration. The requirement is far less stringent: If the evidence establishes that the prosecutor or the judge has made a statement which fairly interpreted by the defendant (in our case of foreign extraction and with only an eighth-grade education, presumably in court for the first time) is a promise of leniency, and the assurance is unfulfilled, the plea may be withdrawn and the case proceed to trial." *In re Valle, supra,* pp 477–478.

## IV

In *Valle* it appeared that a promise had in fact been made by the prosecutor while here the circuit judge found that no promise had been made.

In the recent case of *People v Brooks,* 396 Mich 118; 240 NW2d 1 (1976), this Court reversed and allowed the defendant to withdraw his plea where a representation was made by his lawyer in open court that there had been an agreement with the prosecutor of another county to dismiss charges there pending and it subsequently developed that those charges were not dismissed.[6] The significance of *Brooks* is that it is enough that the defendant's lawyer induces a plea of guilty by a statement that a concession was promised by a prosecutor without proof that the promise was in fact made:

"Like the promise of *Valle,* the *representation of defense counsel* as to a promise by the Kent County Prosecutor could well be interpreted as a promise of leniency; when it went unfulfilled, defendant's request to withdraw the plea should have been granted. * * * That is the remedy in *Valle* and that is what the circuit judge should have done in this case." *People v Brooks, supra,* p 122. (Emphasis added.)

---

[6] Defendant pled guilty in Kalamazoo Circuit Court to a charge of breaking and entering with intent to commit larceny. His lawyer said:

"[T]he inducement for this plea is an agreement between myself and the Kent County Prosecutor's Office wherein those charges that are now presently pending in Kent County will be dismissed and that Mr. Brooks, for the dismissal of those charges, would enter a plea of guilty to this charge in this county."

The Kalamazoo County prosecutor said that he was not aware of any understanding regarding the Kent County charges. The judge then asked the defendant's lawyer: "You are satisfied, Mr. Mc-Whorter, that they will keep their word up there?" to which the lawyer responded: "I have no reason not to believe that they won't keep their word."

The Kent County charges were not dismissed and Brooks was convicted in Kent County of possession of burglary tools and carrying a concealed weapon.

The Kalamazoo circuit judge denied defendant's motion to withdraw his guilty plea, stating he had "no power to make the Prosecutor of Kent County live up to any agreement which it can be proven was made between defense counsel in this case and the Kent County Prosecutor's Office. The enforcement of such an agreement, if there was one, would have to be in Kent County."

## V

In both *Valle* and *Brooks* the representation by the lawyer to the defendant was repeated in open court at the time the plea was offered. Here the representation was made *sub rosa* before the plea was offered and the plea-taking judge was unaware of it. Nevertheless, the principle of *Valle* and *Brooks* applies because here as there the defendant's lawyer has acknowledged in court that he made a representation to the defendant to induce the plea.[7] That representation could not be fulfilled because it appears it was either false or the result of a misunderstanding between the prosecutor and defendant's lawyer.

Since the circuit judge concluded that in fact there was no understanding with the prosecutor it is of no moment whether the alleged understanding—as claimed by Hall, and as set forth in the lawyer's affidavit and at times testified to by him in court (see fn 1)—was that no recommendation for more than a ten-year minimum would be made or that "probably" no such recommendation would be made.

If it was the prosecutor's position that he had

---

[7] The memorandum opinion states:

"He [the judge] thought the sentencing record belied a conclusion that a promise of a ten-year minimum recommendation had even been suggested to defendant."

While the judge pointed out that the defendant's lawyer had not spoken up before sentencing, even though he then knew of the prosecutor's recommendation for a 20-year minimum, one is not left with the impression on reading the whole opinion of the judge that he had any doubt whether the defendant's lawyer was speaking the truth when he testified regarding his conversations with the *defendant.*

The impression one has, rather, is that the judge was troubled by the conflict created by the testimony of the prosecutor and his chief assistant/the testimony of the defendant and his lawyer/the failure to advance the claims asserted on the plea taking and sentencing records.

said "probably" he would make no recommenda-
tion for more than a ten-year minimum and Hall
had pled guilty and the prosecutor had recom-
mended a 20-year minimum, we would be con-
fronted with a different issue. I suspect that few
prosecutors would, in the circumstances described,
oppose withdrawal of a guilty plea because they
had qualified the inducement with the word "prob-
ably". If such a prosecutor there be, it would be
for the circuit judge to decide whether the prosecu-
tor had acted in good faith and whether the de-
fendant had been misled.


# VI


The memorandum opinion, addressing the rea-
soning of the Court of Appeals, states that under
this Court's decision in *Guilty Plea Cases,* 395
Mich 96, 127; 235 NW2d 132 (1975), it is the
circuit judge's "responsibility to determine
whether the plea was induced by a promise of
leniency which went unfulfilled". The Court of
Appeals erred "in substituting its judgment for
that of the circuit judge".

*Guilty Plea Cases* does not address the question
of appellate review of circuit judge findings on a
motion to withdraw guilty plea.[8]

I see no reason why a judge's findings on such a
motion should not be subject to reversal if we
conclude, applying the usual standard, that he
clearly erred in fact finding. GCR 1963, 517.1. It is
even arguable that more pervasive review is ap-

---

[8] *Guilty Plea Cases,* 395 Mich 96, 127; 235 NW2d 132 (1975), speaks
not only of "promises" but of plea agreements: "If the judge deter-
mines that the plea agreement was not fulfilled" he shall either
amend the judgment of conviction or permit the defendant to with-
draw his plea.

propriate or required. The factual issue is constitutionally rooted:

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack." *Machibroda v United States,* 368 US 487, 493; 82 S Ct 510; 7 L Ed 2d 473 (1962).

"The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." *Santobello v New York, supra,* pp 261–262.

The appellate courts may have an obligation to make their own independent review of the evidence and to substitute their judgment in an appropriate case, as where the question is whether a confession should be suppressed as involuntary.[9]

The circuit judge made no finding whatsoever that was "reversed" by the Court of Appeals, nor did it "substitute its judgment" for that of the circuit judge. While the judge found that no promise had been made by the prosecutor, he made no finding whether any statement had been made by defendant's lawyer or concerning the nature of any such statement, nor did he express a judgment on whether Hall had been induced to plead guilty by an unfulfilled representation.[10]

For the circuit judge it was enough that the prosecutor had made no promise to the defendant's lawyer and that it appeared from the plea-taking record that no promise had been made; even if the lawyer, in a successful effort to induce Hall to plead guilty, had misled him into believing that

---

[9] *See People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972).

[10] The opinion of the circuit judge recounts the testimony of Hall and his lawyer but makes no finding on the disputed issue of whether the word "probably" was used.

the prosecutor would not recommend more than a
ten-year minimum, no relief would be granted.

KAVANAGH, C. J., concurred with LEVIN, J.