*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
June 05, 2026
11:44 AM

v

No. 373611
Shiawassee Circuit Court
LC No. 2023-008201-FC

TYLER BENJAMIN SEXTON,

        Defendant-Appellant.

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions and sentences arising from a fatal car accident. He was convicted of involuntary manslaughter, MCL 750.321, operating while intoxicated causing death, MCL 257.625(4)(a), operating while intoxicated causing serious injury, MCL 257.625(5), operating while license suspended or revoked causing death, MCL 257.904(4), and operating while license suspended or revoked causing serious injury, MCL 257.904(5). The trial court sentenced defendant 10 to 15 years' imprisonment each for the manslaughter, operating while intoxicated causing death, and operating without a license causing death convictions, and 38 to 60 months' imprisonment each for the other convictions.

On appeal, defendant argues the trial court erred by denying his request for specific performance of a plea agreement, that prosecutorial misconduct occurred, and that the trial court failed to justify defendant's upward departure sentences. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. FACTS

### A. THE CAR CRASH, INJURIES, AND DEATH

On January 29, 2022, while his license was suspended, defendant was drinking, became intoxicated, got behind the wheel of a vehicle, and drove it through an intersection marked by a stop sign while traveling about 80 miles per hour. His vehicle collided with another vehicle at the

intersection, causing a rollover accident that seriously injured the other driver and killed one of the two passengers in the vehicle that he struck. The other passenger, an infant, was unharmed. A subsequent blood test showed that defendant's blood alcohol content was 0.159.

Defendant was charged in 2023 with second-degree murder, MCL 750.317, operating while intoxicated causing death, operating while intoxicated causing serious injury, operating while license suspended or revoked causing death, and operating while license suspended or revoked causing serious injury.

### B. PLEA NEGOTIATIONS AND PROCEDURAL BACKGROUND

After defendant's arraignment and a probable cause conference, the parties began discussing a potential resolution of the case by plea. On September 11, 2023, the prosecuting attorney e-mailed defense counsel the following:

As promised here is the written plea offer with a waiver of his prelim.

Dismiss count 1. Plea to remaining counts. With the offer, my estimated guidelines are 50-100 [months].

As charged my estimated guidelines are 225-375/Life.

Please let me know if I don't need to call witnesses for tomorrow.

Defense counsel responded that defendant "will be doing a voluntary bind-over to circuit court, at a minimum to keep the written plea offer in tact [sic]."

Defendant waived his preliminary examination. Next, defendant requested a *Cobbs*[1] conference, which was held on October 19, 2023, for the parties and trial court to discuss the potential length of sentence that, on the basis of the information then available to the judge, appeared to be appropriate. The court declined to state a likely sentence. Thereafter, defense counsel called the prosecutor to request a *Killebrew*[2] agreement for a sentence within the 50 to 100 month guidelines range. The prosecutor denied this request and no further discussion occurred.

Thus, in January 2024, defendant moved for specific performance of the plea offer outlined in the prosecutor's September 2023 e-mail. At the hearing on the motion, defense counsel informed the court that the prosecution had made a new plea offer for second-degree murder if the defense withdrew the motion, then asked to withdraw the motion so that the parties could negotiate. The trial court granted defendant's request. Those negotiations continued but apparently failed. Defendant then refiled the motion for specific performance of the original plea.

At the hearing on the renewed motion, defense counsel argued that specific performance was required because a condition of the plea deal was waiver of the preliminary examination,

---

[1] *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993).

[2] *People v Killebrew*, 416 Mich 189, 206-208; 330 NW2d 834 (1982).

which defendant did, that defendant relied on the plea offer to his detriment by waiving his preliminary examination, and that the requests for a *Killebrew* agreement or a *Cobbs* hearing were not counteroffers and therefore did not signal rejection of the offer.

The court disagreed, finding that there was no evidence that defendant accepted any plea offer. It explained that defense counsel's e-mail to the prosecuting attorney could not "reasonably be read as an acceptance of the plea agreement." The court determined that defense counsel's request for a *Killebrew* agreement amounted to a counteroffer rejecting the original offer, or, alternatively, if not a counteroffer, the *Cobbs* and *Killebrew* requests strongly indicated that the parties never reached a meeting of the minds concerning the original offer. It continued that if defendant thought he had accepted a plea early on, the defense would have requested a plea hearing, but he did not. The court also found that defendant did not detrimentally rely on the waiver of the preliminary examination.

## C. PRETRIAL AND TRIAL PROCEEDINGS

The prosecution filed a motion in limine to preclude evidence about seat belt use and defendant filed a motion in limine to preclude evidence of his prior criminal convictions and driving record. At a pretrial hearing on April 8, 2024, the day before trial, the court heard argument on the pretrial motions, and the prosecutor discussed defendant's possible testimony at trial. The prosecutor stated that if defendant testified, "we may introduce evidence regarding his involvement with a[n] OWI [Operating While Intoxicated] charge and plea to impaired." In response to a question about possible relevance, the prosecutor explained that the evidence "would indicate knowledge, on the part of the defendant, of the dangers of drunk driving." The court suggested this might be impermissible propensity evidence, and the prosecutor conceded that the deadline for giving notice of the intent to introduce such evidence had passed.[3] On this issue, the court noted that "unless I see some law, that just seems like propensity . . . forbidden propensity. And . . . I don't see how that would come in. Maybe there's something out there . . . that would get it in. I'm just not seeing it."

Trial commenced the next day. After the prosecution presented its case, defendant testified about the events of the day that led up to the crash, which included him going to a bar and drinking and eventually driving. On cross-examination, the prosecutor asked defendant a series of questions relevant to this appeal. The prosecutor asked without objection whether, before the date of the crash, defendant had driven without his license, and defendant admitted he had. The prosecutor and defendant next had the following exchange:

> *Q.* Is that the first time you ever got behind the wheel after drinking?
>
> *A.* No, sir.
>
> *Q.* How many times do you estimate you did that?

---

[3] See MRE 404(b)(3)(C) (requiring the prosecutor to provide notice at least 14 days before trial of the intent to offer evidence of other crimes at trial unless good cause is shown).

-3-

*A.* That's the second time.

*Q.* The second time you got behind the wheel after drinking.

The court then interrupted and held an unrecorded sidebar conference, after which the prosecutor changed his line of questioning.

The defense rested. The next day the parties made closing statements, the court read the jury instructions, and the jury began deliberating. The jury acquitted defendant of second-degree murder. The jury found defendant guilty on the lesser included offense of involuntary manslaughter, MCL 750.321, and of all remaining charges.

At sentencing, defendant's guidelines were 50 to 100 months for manslaughter, operating while intoxicated causing death, and operating without a license causing death, but the trial court departed upward and imposed minimum sentences of 10 to 15 years for each. His guidelines for operating while intoxicated causing serious injury and operating without a license causing serious injury were 19 to 38 months and the court sentenced him to 38 to 60 months each on those counts. This appeal followed.

## II. SPECIFIC ENFORCEMENT OF A PLEA AGREEMENT

Defendant contends that he was entitled to specific performance of the original plea offer because he accepted it and relied upon it to his detriment. We disagree.

### A. STANDARDS OF REVIEW

This Court has previously reviewed for clear error and an abuse of discretion regarding a court's ruling on the issue of whether a defendant is entitled to specific performance of an unfulfilled plea agreement. See *People v Hannold*, 217 Mich App 382, 388-389; 551 NW2d 710 (1996), overruled on other grounds by *People v Smart*, 497 Mich 950 (2015); *People v Abrams*, 204 Mich App 667, 673; 516 NW2d 80 (1994). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Blevins*, 314 Mich App 339, 348-349; 846 NW2d 456 (2016). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Rogers*, 338 Mich App 312, 320; 979 NW2d 747 (2021).

### B. ANALYSIS

"The authority of a prosecutor to make bargains with defendants has long been recognized as an essential component of the efficient administration of justice." *People v Martinez*, 307 Mich App 641, 651; 861 NW2d 905 (2014) (quotation marks and citation omitted). "But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v Bursey*, 429 US 545, 561; 97 S Ct 837; 51 L Ed 2d 30 (1977). And a trial court retains the right to reject an agreement, provided the rejection does not invade the prosecutor's charging authority. *People v Siebert*, 450 Mich 500, 509-510; 537 NW2d 891 (1995).

When a defendant enters a guilty plea in exchange for the prosecutor's promise of lenience, and the promise goes unfulfilled, courts will not allow the plea bargain to go unfulfilled. *People v Hall*, 399 Mich 288, 290; 249 NW2d 62 (1976); *People v Brooks*, 396 Mich 118, 121; 240 NW2d

1 (1976). If a plea rests "in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971). "Where defendant's plea is induced by an unkept promise, the Court has discretion to choose between vacating the plea or ordering specific performance as the appropriate remedy, with defendant's choice of remedy being accorded considerable weight." *People v Peters*, 128 Mich App 292, 295-296; 340 NW2d 317 (1983); *People v Siebert*, 201 Mich App 402, 427; 507 NW2d 211 (1993).

"A defendant's right . . . to have the prosecutor perform his promise in a plea bargaining agreement does not inure to a defendant until after he has pled guilty or performed part of the plea agreement to his prejudice in reliance upon the agreement." *In re Robinson*, 180 Mich App 454, 459; 447 NW2d 765 (1989), citing *People v Heiler*, 79 Mich App 714, 719 n 4; 262 NW2d 890 (1977). "Detrimental reliance," or prejudice, in the context of a plea agreement means that "no other remedy is available which will return defendant to the position he enjoyed prior to making the agreement at issue." *People v Gallego*, 430 Mich 443, 456 n 10; 424 NW2d 470 (1988).

Here, defendant never tendered a guilty plea in court, and the court never formally accepted one. Instead, defendant argues that he accepted the plea offer through the September 21, 2023, e-mail to the prosecutor, and that he detrimentally relied on that plea offer by waiving his preliminary examination.

The defense attorney's statement in response to the prosecutor's September 2023 e-mail that defendant "will be doing a voluntary bind-over to circuit court, at a minimum to keep the written plea offer in tact [sic]", however, does not mean that defendant had accepted the offer detailed in the e-mail. On the contrary, the unambiguous language in the e-mail indicated that defendant sought merely to keep the offer open, which further indicated that he wanted to decide later whether to accept it.

Defendant's subsequent actions confirmed that he had not accepted the agreement. As the trial court noted, defendant then sought a *Cobbs* conference and, when that did not provide clarity, he sought a *Killebrew* agreement. The trial court reasonably concluded that the request for a *Killebrew* agreement amounted to a counteroffer, and therefore a rejection of the original offer, and that both events were evidence that negotiations were ongoing, not that defendant had accepted an offer. In fact, the record shows that the parties continued to negotiate after defendant first filed a motion for specific performance. Courts are not compelled to enforce "tentative" plea bargains. *In re Robinson*, 180 Mich App at 459 ("*Santobello* and its progeny do not involve court-compelled performance of a tentative agreement from which the prosecutor has withdrawn prior to judicial approval.").

Moreover, the parties never attempted to place the so-called agreement on the record. "The court rules provide that before accepting a guilty plea, the trial court must ascertain both whether a plea agreement has been made, and, if so, the terms of the agreement." *Hannold*, 217 Mich App at 386, citing MCR 6.302(A) and (C)(1)-(2). A plea bargain must be stated on the record or reduced to a writing signed by the parties to be effective. See MCR 6.302(C)(1). Nothing of the sort is in this record.

Defendant argues that he detrimentally relied on the plea offer by waiving his preliminary examination. Yet he cites no authority that the waiver of a preliminary examination constitutes prejudice in these circumstances. Regardless, "[t]he right to a preliminary examination in Michigan is a creation of statute," and "[t]here is no federal or state constitutional requirement" for a preliminary examination. *People v Hunt*, 442 Mich 359, 362; 501 NW2d 151 (1993) (citation omitted). The examination simply determines "whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it." *Id.* It also serves to provide notice of the nature of the accusations against the defendant. *Id.*

Critically, on appeal, defendant fails to explain how he relied to his detriment on the prosecutor's e-mail when he waived the preliminary examination. Given that he was found guilty beyond a reasonable doubt at trial of involuntary manslaughter and the other charges, it is extremely unlikely he would have had better success at a preliminary examination under the probable-cause standard. *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) ("The probable-cause standard of proof is, of course, less rigorous than the guilty-beyond-a-reasonable-doubt standard of proof."). For these reasons, the trial court did not err by ruling that defendant was not entitled to specific performance of the plea agreement. *Hannold*, 217 Mich App at 390-391.

## III. PROSECUTORIAL MISCONDUCT/ERROR

Defendant argues that the prosecutor violated his due-process rights by impeaching him with evidence of his prior act of driving while intoxicated on the ground that such evidence was inadmissible. We disagree.

### A. ISSUE PRESERVATION AND STANDARDS OF REVIEW

Defendant contends that he preserved his claim of prosecutorial misconduct (1) by objecting to the prosecutor's stated intention to cross-examine defendant with prior-acts evidence at a pretrial conference and (2) because the prosecutor changed his line of questioning after the trial court held an unrecorded sidebar conference during trial.

In general, preserved "[i]ssues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *Id.* (citation omitted). Defense counsel did not object at trial when the prosecutor cross-examined defendant about his driving history and the record does not reflect whether defense counsel objected during the sidebar. Because no timely objection was made, we find that this claim of error is unpreserved. *Id.*

In addition, although defendant frames his claim of prosecutorial error in constitutional terms, not all trial errors amount to constitutional due-process violations. *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008), citing *People v Toma*, 462 Mich 281, 296; 613 NW2d 694 (2000). "Merely framing an issue as constitutional does not make it so." *Blackmon*, 280 Mich App at 261. "Where there is no allegation that prosecutorial misconduct violated a specific

constitutional right, a court must determine whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 262.

Defendant argues that the prosecutor violated MRE 404(b) and MRE 609(a). In this context, defendant's claim of error is nonconstitutional in nature. *Blackmon*, 280 Mich App at 262. Thus, "[t]o avoid forfeiture of an unpreserved, nonconstitutional plain error, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003) (citations omitted). "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*., citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## B. ANALYSIS

Defendant argues that questions the prosecutor asked on cross-examination regarding his prior drinking and driving were inadmissible under MRE 609 and MRE 404(b) and permitting them denied him a fair trial. We disagree.

MRE 609 permits the introduction of certain felony convictions for purposes of impeaching a witness's credibility. See *People v Snyder*, 301 Mich App 99, 105; 835 NW2d 608 (2013). MRE 404(b) makes admissible certain "other acts" evidence subject to limits and provides as follows:

> (1) Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) If it is material, the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident.

> (3) In a criminal case, the prosecutor must:

> (A) provide notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

> (C) do so in writing at least 14 days before trial, unless the court, for good cause, excuses pretrial notice, in which case the notice may be submitted in any form.

Under MRE 403, even otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Our Supreme Court has established a four-part analytical framework to address admissibility under MRE 404(b). *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994). This standard requires:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017), citing *VanderVliet*, 444 Mich at 55.]

Here, during cross-examination, the prosecutor asked defendant a series of questions regarding his suspended driver's license, as well as his marijuana and alcohol consumption on the day of the accident. The following exchange occurred without any objection:

> *Q*. You didn't have your license on that day. Prior to that day and leading up to it, had you driven without your license?
>
> *A*. I have before, yes.
>
> *Q*. Okay. And how close in time to that accident, to the crash?
>
> *A*. I don't know.
>
> *Q*. More than one time?
>
> *A*. It had been a while, that's for sure.
>
> *Q*. More than one time?
>
> *A*. Yes.
>
> *Q*. More than two?
>
> *A*. Probably.
>
> *Q*. Is that the first time you ever got behind the wheel after drinking?
>
> *A*. No, sir.
>
> *Q*. How many times do you estimate you did that?
>
> *A*. That's the second time.
>
> *Q*. The second time you got behind the wheel after drinking.

After this exchange, the court held a sidebar and this line of questioning ended.

As an initial matter, defendant's reliance on MRE 609 misses the mark. Nothing in this line of questioning elicited evidence that defendant had been pulled over, charged, arrested, or convicted of a driving offense, driving without a license, or a *drunk* driving-related offense. MRE 609 simply is not implicated by this testimony. *Snyder*, 835 Mich App at 105-106.

Applying MRE 404(b) is more complicated. It is unclear for what purpose the prosecutor elicited the testimony about defendant's prior driving without a license and getting "behind the wheel after drinking." The testimony is not obviously improper propensity evidence to prove that defendant drove without a license and was drinking on the day of the accident because defendant testified to as much. Instead, the defense was that he did not intend to cause any injuries. Also, defense counsel did not object to any of these questions. *Jones*, 468 Mich at 355 ("The purpose of requiring objections to be timely . . . is to give the trial court an opportunity to correct the error.").

That said, assuming MRE 404(b) applies, we hold that the trial court did not abuse its discretion in admitting—and the prosecution did not engage in misconduct in eliciting—testimony about defendant once previously getting "behind the wheel after drinking" under the four-part framework from *VanderVliet*.

First, the prosecution plausibly sought to introduce the evidence for a proper purpose. Under MRE 404(b)(2), evidence of prior acts may be admitted whenever it is relevant to a noncharacter purpose such as to show knowledge, intent, or lack of accident. *People v Starr*, 457 Mich 490, 496-497; 577 NW2d 673 (1998). At the pretrial hearing, the prosecutor argued that evidence of defendant's past OWI charge or plea to impaired driving "would indicate knowledge, on the part of the defendant, of the dangers of drunk driving." The prosecution may also have been seeking to impeach defendant by contradiction, given that he had testified that, compared with his brother driving, defendant thought it was "a better and safer idea" for him to drive, and that he "did everything that [he] could" to avoid the accident. *People v Wilder*, 502 Mich 57, 63-64; 917 NW2d 276 (2018) (citation omitted) ("Generally speaking, impeachment by contradiction can be a proper purpose for the admission of other-acts evidence."). These were plausible proper purposes for asking if he had previously gotten "behind the wheel after drinking." *People v Werner*, 254 Mich App 528, 539; 659 NW2d 688 (2002) (permitting admission of evidence of prior drunk driving incident to show knowledge and absence of mistake in second-degree murder charge).

Second, asking about previously getting "behind the wheel after drinking" was relevant to the charges, particularly that of second-degree murder. "The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *Id*. at 531 (quotation marks and citation omitted). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. (quotation marks and citation omitted). Malice can be established by proof of "intent to do an act that is in obvious disregard of life-endangering consequences." *Id*. (quotation marks and citation omitted). The prosecution alternatively needed to prove that defendant "acted in a grossly negligent manner" for the lesser included offense of involuntary manslaughter.

This Court has held that prior incidents of drinking and driving are admissible under MRE 404(b) as relevant evidence of malice in second-degree murder cases. In *Werner*, there was evidence that "defendant knew from a recent prior incident that if he drank, he might experience a blackout and drive recklessly and irresponsibly." *Werner*, 254 Mich App at 531. The evidence was relevant because defendant's previous blackout "made it more probable than not that he was aware this could happen to him." *Id.* at 540. This Court has applied the logic behind *Werner* to similar cases involving evidence of impaired driving and charges of second-degree murder. See, e.g., *People v Bergman*, 312 Mich App 471, 493-494; 879 NW2d 278 (2015) (applying *Werner* to hold that prior-act evidence involving impaired driving through prescription medication abuse was relevant to the malice element of second-degree murder).

Defendant having previously gotten behind the wheel after drinking showed that he was aware of the risks of driving under the influence of alcohol and disregarded that such behavior causes death or great bodily harm. The second prong of *VanderVliet* was satisfied here. *Denson*, 500 Mich at 402-403.

Third, we hold that the probative value of the evidence is not substantially outweighed by any unfair prejudicial effect. *VanderVliet*, 444 Mich at 74. Here, the jury heard only that defendant had once before gotten "behind the wheel after drinking" and the defense did not object. The details of the prior incident were not disclosed to the jury. Nothing about a general reference to this conduct would logically have shocked the jury, created bias, or elicited sympathy or anger. See *People v Parrott*, 335 Mich App 648, 681; 968 NW2d 548 (2021). In contrast, the jury was presented with extensive evidence, including testimony from defendant himself, regarding defendant's decision to drive a vehicle without a license and while impaired that resulted in death and serious bodily injury. As such, the prosecutor's questions were not unduly prejudicial. *Werner*, 254 Mich App at 540 (probative value of the prior-act evidence outweighed the danger of unfair prejudice).

Fourth, there was no limiting instruction requested or given concerning the evidence, and this Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). The trial court could have read to the jury the standard instruction regarding evidence of other acts to limit its consideration for certain purposes, but the defense did not request it. See M Crim JI 4.11. Under *VanderVliet*, the unobjected-to admission of the brief disputed testimony was not improper nor unduly prejudicial to defendant.

Concerning the notice required, the prosecutor concedes that timely notice was not given under MRE 404(b)(3)(C). But assuming that rule applies, the 14-day notice requirement is not absolute and can be overcome by a showing of good cause. Also, one purpose of the requirement is to "ensure that the defendant has an opportunity to object to and defend against this sort of evidence." *People v Hawkins*, 245 Mich App 439, 454; 628 NW2d 105 (2001).

Here, the parties and the court discussed the prosecution's potential cross-examination of defendant about his prior conviction during the pretrial conference, and when the prosecution asked defendant about prior instances of driving without a license and whether he had previously "got behind the wheel after drinking" the defense did not object. *Jones*, 468 Mich at 355. Defendant was not unfairly surprised or deprived of an opportunity to "marshal arguments

regarding both relevancy and unfair prejudice." *People v Jackson*, 498 Mich 246, 261; 869 NW2d 253 (2015). In this context, any error was harmless. *Id.* at 278.

The trial court did not plainly err in allowing the unobjected-to testimony because it was admissible under MRE 404(b) and *VanderVliet*, nor did the prosecution engage in misconduct in eliciting this testimony. *Jones*, 468 Mich at 355; *Blackmon*, 280 Mich App at 262. Defendant has not shown that he was denied a fair and impartial trial. For these reasons, defendant has failed to show that any reversible error occurred on the basis of his claim of prosecutorial misconduct.

## IV. SENTENCING DEPARTURE

Defendant contends that his sentence was disproportionate and that the trial court failed to justify the extent of its upward departure from the applicable sentencing guidelines. We disagree.

### A. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citation omitted). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). Specifically, at issue is "whether the trial court abused its discretion by violating the principle of proportionality . . . . " *Dixon-Bey*, 321 Mich App at 520 (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Rogers*, 338 Mich App at 320. The trial court's explanation "must be sufficiently detailed to facilitate appellate review." *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008).

### B. ANALYSIS

The "principle of proportionality requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). " '[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. This Court in *Dixon-Bey* set forth as follows:

> [R]elevant factors for determining whether a departure sentence is more proportion-
> ate than a sentence within the guidelines range continue to include (1) whether the
> guidelines accurately reflect the seriousness of the crime; (2) factors not considered
> by the guidelines; and (3) factors considered by the guidelines but given inadequate
> weight. [*Dixon-Bey*, 321 Mich App at 525 (citations omitted).]

In addition, the sentencing court may consider the defendant's misconduct in custody, any expressions of remorse, and the potential for rehabilitation. *Id.* at 525 n 9 (citations omitted). "In imposing an out-of-guidelines sentence, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence [i.e., one within the

guidelines] would have been." *People v Lydic*, 335 Mich App 486, 500-501; 967 NW2d 847 (2021) (quotation marks and citation omitted).

Here, the court explained its findings and rationale for imposing an out-of-guidelines sentence. Defendant's involuntary manslaughter, operating while intoxicated causing death, and operating while license suspended causing death convictions were Class C felonies. The applicable sentencing grid for those convictions went up to level VI, which was for 75+ Offense Variable (OV) points, and defendant scored 130 or 140 points for each. Defendant had a Prior Record Variable (PRV) score of 27 (level D), thus his guidelines were 50 to 100 months. For each of these convictions, the court departed upward, imposing sentences of 120 to 180 months. Explaining its departure, the court expressed its belief that the sentencing grid did not fully account for some factors in this case:

> First, the applicable sentencing grid only counts for 75 points of offense variables. In this case, the Court has assessed 130 points on offense variables, greatly exceeding the highest score contemplated by the guidelines. That tells the Court that the legislative guidelines do not consider the full scope of the criminal behavior on display in this case. The guidelines consider each offender[']s criminal history generally, but they do not always provide a nuanced look at the details.

This Court has previously upheld a departure sentence where the sentencing court offered a similar rationale. See *People v Cline*, 276 Mich App 634, 649-653; 741 NW2d 563 (2007) (holding that where the sentencing grid cut off at 75+ OV points, and the defendant's score of 135 OV points greatly exceeded the highest score contemplated by the grid, the sentencing court's reliance on this fact was an appropriate consideration in departing from the guidelines).

Additionally, the court explained why defendant's PRV 6 score (a subset of his total PRV score) did not fully reflect the gravity of the offense. PRV 6 reflects the offender's "relationship to the criminal justice system." MCL 777.56(1). Here, defendant was assessed five points, which MCL 777.56(1)(d) prescribes when "[t]he offender is on probation or delayed sentence status or on bond awaiting adjudication of sentencing for a misdemeanor." The court explained, however, that the "guidelines do not consider . . . the nature of that bond." Here, the trial court noted that defendant already was "on bond for operating while impaired . . . and driving without a license" when the collision occurred, and that when he committed the crime, he was "also operating [while] impaired and driving without a license." The court found that this fact indicated defendant was not deterred nor rehabilitated by his "earlier brush with the law" and the "threat of additional criminal sanctions." Therefore, the court concluded that defendant posed a risk to public safety if he remained free and able to drive, stating that incapacitation through a "prolonged period of separation from society" was the only way to prevent that risk.

Next, the court addressed OV 5, which covers "psychological injury to a member of a victim's family." See MCL 777.35. The court noted that its only options were to assess zero or 15 points, but that 15 points was not enough because it "presume[s] that the trauma endured by every survivor is equal." The court then referred to "two uniquely devastating victim-impact statements." The first was from the mother of the seriously injured driver, and the other was from the mother of the passenger who died. The court found these statements "deeply moving," and found that 15 points for OV 5 gave "inadequate weight to this families' [sic] suffering."

-12-

The trial court's detailed explanations demonstrate that it did not abuse its discretion by imposing sentences above the guidelines either in terms of proportionality or the extent of the departures. *Dixon-Bey*, 321 Mich App at 525.

In addition, the court specifically noted that PRV 6 did not adequately reflect the nature of the offense because it did not account for defendant's being on bond for the same kind of dangerous conduct that underlay this case. Similarly, the court concluded that OV 5 failed to give adequate weight to the psychological injuries that the victims' family members suffered. In particular, the two impact statements given by the victims' family members described the overwhelming psychological trauma resulting from defendant's conduct. Similarly, the court explained why PRV 6 did not adequately account for defendant being on bond for comparable dangerous conduct.

Defendant disagrees, but he does not identify any errors in the court's analysis. Instead, he simply asserts that the court did not adequately account for the facts of the case and failed to justify the extent of its departure. But, as we have explained, the court explained its reasons for departing from the guidelines, and for the extent of the departure, the minimum of which was just 20 months above the guideline range. See *People v Rosa*, 322 Mich App 726, 748; 913 NW2d 392 (2018) (holding that a 19-month upward departure was not disproportionate).

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense

-13-